**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Denis DORAIS, Defendant–Appellant.**

**United States of America,**
**Plaintiff–Appellee,**

v.

**Laurie Gomes, Defendant–Appellant.**

**Nos. 99–10091, 99–10267.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Jan. 12, 2001

Filed March 1, 2001

Karyn H. Bucur, Laguna Hills, California; Edmundo Espinoza, Del Mar, California, for the defendants-appellants.

Kenneth Sorenson and Larry L. Butrick, Assistant United States Attorneys, Honolulu, Hawaii, for the plaintiff-appellee.

Before: SNEED, GRABER, and PAEZ, Circuit Judges.

GRABER, Circuit Judge:

Defendants Denis Dorais and Laurie Gomes became the focus of a police drug investigation after a hotel manager reported suspicious activities in their room at the New Otani Hotel. Police eventually arrested Gomes for drug possession after they stopped her because of a rental agency's report that her rental car was overdue. During the stop, Gomes consented to a search of her purse, which yielded methamphetamine, and made incriminating statements about Dorais. Later, police arrested Dorais when they found methamphetamine in Defendants' hotel room while they were helping the hotel manager evict him.

In their joint motion to suppress, Defendants sought to suppress evidence of the methamphetamine in Gomes' purse; Gomes' incriminating statements about Dorais, made during the stop; the methamphetamine in the hotel room; and statements made by Dorais in the hotel room. They argued that (1) the police had neither probable cause nor reasonable suspicion to stop the car and Gomes' consent and statements were a product of the illegal stop;[1] and (2) the warrantless search of the hotel room violated the Fourth Amendment.

The district court denied Defendants' motion to suppress. We affirm.

1. Defendants did not otherwise challenge the voluntariness of Gomes' statements or of her consent to search.

2. Although the district court made no findings about the timing of Defendants' extension, it

## FACTUAL AND PROCEDURAL BACKGROUND

### A. The Hotel

Gomes checked into the New Otani Hotel on July 1, 1998. She informed the hotel that two men, Dorais and another, would be staying in her room; completed a registration card that included Dorais' name; registered two vehicles to the room; and paid $1,400 in cash to cover the cost of the room through July 5, 1998. The hotel assigned her to room 610.

At some point, Gomes and Dorais decided to extend their stay.[2] Because room 610 was not available for the night of July 5, the hotel reassigned Dorais and Gomes to room 421. At first they resisted the move but, after repeated requests by the hotel, they relocated to room 421 at 2:30 p.m. on July 5. After the move, the hotel asked Dorais several times to come to the front desk to sign a new registration card, but Dorais never signed the card.

On July 6, 1998, Curtis Kawamoto, the evening manager, contacted acquaintances of his who worked for the Hawaii Police at the airport. Kawamoto expressed concern about "suspicious actions" that had been occurring in room 610. As a result, the police ran a background check on Dorais and Gomes. In response to Kawamoto's report, Officer Yamamoto contacted Glen Manaba, the assistant front-office manager and security manager of the New Otani Hotel, on the morning of July 7, 1998. The two agreed to meet to discuss Kawamoto's report. Manaba requested a background check on the guests who were now in room 421; Yamamoto informed him that he had already run a check and that Gomes was the only guest with a criminal record. Yamamoto told Manaba to call if he noticed suspicious conduct by the occupants of room 421 but did not inform the

appears from the receipt in Exhibit 1 that, on July 5, Defendants extended their stay until July 6 and that, on July 6, they extended their stay until July 8.

hotel manager that the guests already were the subjects of a drug investigation.

At some point on July 7, the hotel decided that it would not permit Gomes and Dorais to extend their stay past July 8. There is no evidence in the record that the guests requested an extension; likewise, there is no evidence in the record that the hotel informed them of its decision. On the morning of July 8, Yamamoto contacted Manaba to find out if Dorais and Gomes had checked out and to request permission to search the room *after* they checked out. He also told Manaba that he would be parked outside the hotel, in case the hotel required his assistance.

At 10 a.m. on July 8, the hotel left a message on the voicemail in room 421, reminding the guests of the noon checkout time. Gomes left the hotel before noon. Dorais remained. Shortly after noon, the executive housekeeper knocked on the door of room 421 to inquire when Dorais would be checking out. Dorais told her that he intended to stay until 12:30. The housekeeper told Dorais "OK" and said that she would tell the front desk. She could not remember whether she reported to the front desk Dorais' intent to stay until 12:30.

Around noon, Manaba spoke with the Hawaii Police officers, who entered the hotel to inquire whether the occupants of room 421 had checked out yet. Manaba informed them that the guests remained in the room, and he told the officers that he wished to evict them if they stayed past checkout time. One of the officers contacted his supervisor to arrange for permission to proceed with the investigation of the room and to assist the hotel in the eviction. At about 12:40, Manaba and six officers went to room 421 to evict Dorais. Manaba knocked on the door and told Dorais that he was there to evict him. When Dorais opened the door, one of the officers identified himself and told Dorais that the police would assist in the eviction. The police entered the room and saw a

substance on the coffee table that resembled methamphetamine. At that point, the police arrested Dorais and conducted a pat-down search incident to arrest. The search yielded a baggie containing a substance resembling crystal methamphetamine. The police then obtained a search warrant to search the closed boxes and envelopes that they found in the room and on Dorais.

#### B. *The Car*

At 8:23 p.m. on July 4, 1998, Defendant Gomes rented a car from Dollar Rent-a-Car. The car was due back at the same time two days later. On July 6, after the hotel had contacted the police to express concern about Dorais' and Gomes' activities, Yamamoto called Dollar to inquire about the car rental. He asked when the car was due back and asked the rental agency to contact him when Gomes returned it.

As of July 8, Gomes had not returned the car. *See* Haw.Rev.Stat. § 708–837 (providing a 48–hour grace period before a rental car is considered stolen). Dollar tried without success to contact her. When it could not reach her, it notified the police at 10 a.m. that the car was overdue. The manager of Dollar testified at the hearing on the motion to suppress that it was an oversight on the part of Dollar that it contacted the police before a full 48 hours had elapsed.

Based on the complaint from Dollar, Officer Yamamoto stopped Gomes between 10:30 a.m. and 12 p.m. on July 8.[3] Gomes signed a consent to search her purse, after stating that there were drugs in it that "Deni" had given her. The search yielded crystal methamphetamine.

Dorais filed the motion to suppress that is the subject of this appeal, and Gomes later joined in it. The district court held a three-day evidentiary hearing, after which it denied the motion to suppress.

---

**3.** There was conflicting testimony in the record about the time of the stop. The district court found that Gomes had been arrested "sometime before noon."

Thereafter, Dorais and Gomes conditionally pleaded guilty to possessing more than 100 grams of methamphetamine with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A) and 18 U.S.C. § 2. Both Defendants reserved the right to appeal the district court's denial of their motion to suppress. After being sentenced, they timely filed their notices of appeal.

## STANDARD OF REVIEW

■ We review de novo the denial of a motion to suppress. *United States v. Henderson*, No. 99–10526, 2000 WL 1804068, *6 (9th Cir. Dec.11, 2000). Whether a defendant has standing to challenge a search under the Fourth Amendment is a mixed question of law and fact. *United States v. Armenta*, 69 F.3d 304, 306–07 (9th Cir.1995). We review the district court's legal conclusions de novo and its factual findings for clear error. *Id.* at 307.

## DISCUSSION

### A. *Standing to Challenge the Police Entry into the Hotel Room*

The district court held that Defendants lacked standing to challenge as a search the police entry into the hotel room because neither had a reasonable expectation of privacy in the room. The court reasoned that (1) Gomes had no privacy interest in the room because she had checked out of the hotel before the search took place, and (2) Dorais' privacy interest expired at checkout time, which was noon on July 8, 1998, also before the entry. The court's reasoning and conclusion are correct with respect to Gomes. *United States v. Haddad*, 558 F.2d 968 (9th Cir.1977) (holding that a guest has no expectation of privacy in a hotel room after checking out, whether voluntarily or involuntarily). As to Dorais, we affirm on different grounds the ruling that Dorais had no reasonable expectation of privacy in room 421 at 12:40 p.m.

### 1. *General Principles*

■ In order to have standing to challenge the search of a hotel room under the Fourth Amendment, a defendant must establish a reasonable expectation of privacy in the room. *Minnesota v. Olson*, 495 U.S. 91, 95, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990). "A subjective expectation of privacy is legitimate if it is one that society is prepared to recognize as 'reasonable'." *Id.* at 95–96, 110 S.Ct. 1684 (citation and internal quotation marks omitted).

This court has held that a defendant has *no* reasonable expectation of privacy in a hotel room when the rental period has expired and the hotel has taken affirmative steps to repossess the room. *United States v. Huffhines*, 967 F.2d 314 (9th Cir. 1992). On the other hand, this court has concluded that the lessee of a rental car maintains a reasonable expectation of privacy in the car after the expiration of the lease, when the rental agency has taken no affirmative steps to repossess the car and when it has a policy of permitting lessees to keep cars and simply charging them for the extra time. *Henderson*, 2000 WL 1804068, at *6–*7. Other courts that have considered the issue have recognized that a guest may retain a reasonable expectation of privacy in a hotel room after checkout time based on the relationship between the guest and the hotel or based on the hotel's generally lax practices in enforcing its checkout time. *See, e.g., United States v. Kitchens*, 114 F.3d 29, 31–32 & 32 n. 3 (4th Cir.1997); *United States v. Owens*, 782 F.2d 146, 149–50 (10th Cir.1986).

In *Huffhines*, we stated that "[a] guest in a motel has no reasonable expectation of privacy in a room after the rental period has expired." 967 F.2d at 318. We held that the defendant lacked standing to challenge a search of his hotel room when the rental period expired at noon, the motel manager repossessed the room in the afternoon, and the manager consented to a search of the room in the evening. *Id.* Similarly, in *Haddad*, we held that the defendant lacked a reasonable expectation

of privacy in a hotel room after the hotel ejected him from the room and required him to check out. 558 F.2d at 975.

We have recognized, however, that the mere expiration of the rental period, in the absence of affirmative acts of repossession by the lessor, does not automatically end a lessee's expectations of privacy. In *Henderson,* we concluded that a defendant had a reasonable expectation of privacy in a rental car that was four days overdue. 2000 WL 1804068, at *6–*7. We reasoned that the rental company had not attempted to repossess the car, that it was not unusual for a customer to keep a car past the time specified in the rental agreement, and that the company had a routine practice of simply charging the customer for the late return. *Id.* In *Henderson,* we distinguished *Huffhines* and *Haddad* on the ground that, in those cases, the hotel management had terminated the defendants' control of their hotel rooms through private acts of dominion. *Id.* at *7.

Similarly, in *Owens,* the Tenth Circuit held that a motel guest had a reasonable expectation of privacy in his room after checkout time. 782 F.2d at 149–51. There, the police arrested one occupant of the room (the defendant), and, afterward, contacted the front desk to inform the motel of the arrest and to check on the status of the room. *Id.* at 148–49. The motel manager informed the police that the rental period on the room had expired, and the manager authorized the police to evict the remaining occupant. *Id.* at 148. The court based its conclusion that the defendant's expectation of privacy in the motel room was reasonable on three factors. First, a few days earlier, when the defendant had stayed past checkout time, instead of evicting him the hotel permitted him to extend his stay and pay for the additional term of occupancy. *Id.* at 150. Second, the manager testified that it was the motel's policy to ask those guests staying past checkout time whether they would be leaving or extending their stay; it was not the motel's policy to evict guests who were staying past checkout time for brief periods. Third, the defendant had given a large cash deposit, which may have led him to believe that he was paid up through the rest of the week. *Id.*

By contrast, in *Kitchens,* the Fourth Circuit concluded that the defendants lacked standing to challenge a search of their hotel room an hour after checkout time. 114 F.3d at 32. The court recognized that "[a] guest may still have a legitimate expectation of privacy even after his rental period has terminated, if there is a pattern or practice which would make that expectation reasonable." *Id.* It further acknowledged that a warrantless search immediately after checkout time "would be improper if the hotel, as most hotels do, had a pattern or practice of allowing guests some leeway regarding the checkout time." *Id.* at 32 n. 3. However, the court found that the defendants did not have a pattern or practice of staying past checkout time and that the hotel had a *strict* policy of enforcing checkout times. *Id.* As a result, the defendants' reasonable expectation of privacy in the room expired at checkout time.

Under *Huffhines,* as a general rule a defendant's expectation of privacy in a hotel room expires at checkout time. However, consistent with *Henderson,* we hold that the policies and practices of a hotel may result in the extension past checkout time of a defendant's reasonable expectation of privacy. The existence and duration of that expectation depend on the facts and circumstances in each case.

2. *Application to This Case*

In this case, the district court found that Gomes had checked out of the hotel before noon on July 8. That finding is not clearly erroneous. Thus, under *Haddad,* she lacks standing to challenge the entry into the hotel room.

As to Dorais, the answer is the same, but the explanation more complex. Having concluded that a hotel guest's expectation of privacy does not expire automatically at checkout time, we examine the

record to determine whether Dorais presented sufficient evidence to meet his burden of proving that he held a reasonable expectation of privacy in room 421 at the time of the search. *See United States v. Singleton,* 987 F.2d 1444, 1447 (9th Cir. 1993) (holding that a defendant bears the burden of proving a legitimate expectation of privacy). On the record before us, Dorais has not met his burden.

Dorais demonstrated that his reasonable expectation of privacy in room 421 extended past noon; but that reasonable expectation expired at 12:30 p.m.

First, the hotel communicated the noon checkout time to Dorais. The noon checkout time was clearly posted in the room, and the hotel, following its standard checkout procedure, reminded Dorais at 10 a.m. of the noon checkout time.

Second, Dorais proved that the hotel did not enforce its checkout time strictly. Manaba testified that it was not normal hotel policy to issue trespass notices to overstaying guests immediately at noon but, rather, that the standard practice was to ask guests at noon when they would be leaving. Additionally, the executive housekeeper testified that it was hotel practice for the housekeeping staff to ask guests when they would be leaving.

Third, however, we concluded for four reasons that these practices extended Dorais' expectation of privacy in room 421 only until 12:30.(a) The housekeeper testified that the reason why the housekeeping staff did not tell guests to leave immediately at noon was that "thirty minutes is ... not that much difference." Her testimony suggests that, although the New Otani permits guests some leeway with respect to checkout time, the leeway time is limited. (b) The district court found, and the record supports the finding,[4] that Dorais stated only that he planned to remain in the room *until 12:30.* (c) Gomes had left the room already. (d) The hotel's 10 a.m. reminder of the checkout time, and the

housekeeper's noon visit, put Dorais on notice that any extension past noon would be of limited duration. Those factors establish that Dorais' expectation of privacy was reasonable only until 12:30. Therefore, we affirm the district court's ruling that Dorais lacked standing to challenge the police entry, which occurred at 12:40.

### B. *The Stop of the Car*

■ Defendants also challenge the stop of the rental car, arguing that the police lacked probable cause or reasonable suspicion to stop the car. They further argue that the lack of probable cause or reasonable suspicion rendered Gomes' consent to search invalid and that, as a result, the drugs that they found in her purse and the incriminating statements that she made about Dorais must be suppressed.

■ This court recently clarified that "the Fourth Amendment requires only reasonable suspicion in the context of investigative traffic stops." *United States v. Lopez–Soto,* 205 F.3d 1101, 1105 (9th Cir. 2000). Therefore, we examine only whether the police had reasonable suspicion to stop Gomes' car. "Reasonable suspicion is formed by 'specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity.'" *Id.* (quoting *United States v. Michael R.,* 90 F.3d 340, 346 (9th Cir.1996)).

In this case the police stopped Gomes' car after they had received a report from Dollar Rent–a–Car, the car's owner, that the car was "overdue." Had Dollar intentionally made a false police report, it would have been subject to criminal penalties under Hawaii law. *See* Haw.Rev.Stat. § 710–1015 (defining the crime of false reporting to law-enforcement authorities). Based on the report, the police were reasonable to suspect that Gomes may have been committing a crime because, under

---

4. The housekeeper stated: "I ask: What time are you checking out, and he say 12:30," and "He just answer me 12:30 he checking out."

Hawaii law, a person who keeps a rental car for more than 48 hours after it is due commits a misdemeanor. Haw.Rev.Stat. § 708–837. Thus, the police had reasonable suspicion when they stopped Gomes. *See Illinois v. Gates*, 462 U.S. 213, 233–34, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983) (holding that "if an unquestionably honest citizen comes forward with a report of criminal activity—which if fabricated would subject him to criminal liability—we have found rigorous scrutiny of the basis of his knowledge unnecessary"); *United States v. Butler*, 74 F.3d 916, 921 (9th Cir.1996) (holding that police had probable cause to stop a Camaro and arrest the driver without a warrant when they were acting on a report from an identified citizen that the Camaro had been stolen).

Defendants argue that the officers had an affirmative duty to determine whether Gomes' car was a full 48 hours overdue and that, because the car was not yet quite 48 hours late, the officers lacked "jurisdiction" to make the stop. Defendants' argument fails under the reasoning of *Gates*. Because the officers were acting on a police report from Dollar, whose honesty has not been questioned, they had reasonable suspicion to stop the car even if the report turned out to be mistaken due to its timing.

Defendants further contend that this court's decision in *United States v. Twilley*, 222 F.3d 1092 (9th Cir.2000), establishes that the police lacked reasonable suspicion to stop Gomes. Defendants misapprehend *Twilley*. In that case, a police officer stopped the defendant based on his mistaken belief that defendant was violating California law by displaying only one license plate; but, in actuality, California law required the defendant to display only one license plate. *Id.* at 1096. This court held that the officer lacked reasonable suspicion to stop the defendant because reasonable suspicion cannot be premised on a mistaken understanding of the law. *Id.*

Unlike in *Twilley*, the officers here stopped Gomes not because of a mistaken understanding of the law, but because of a mistake of fact. The officers correctly understood that Hawaii law criminalizes the possession of a rental car more than 48 hours beyond its return time; the officers simply made a mistake of fact as to how long overdue the car was. That mistake of fact does not defeat the officers' reasonable suspicion. *Cf. United States v. Wallace*, 213 F.3d 1216, 1220–21 (9th Cir.2000) (holding that an officer had reasonable suspicion to stop a car with tinted windows when California law prohibited certain tinted windows, even though it was later established that the windows were not sufficiently tinted to violate the law).

Because the police had reasonable suspicion to stop Gomes' car, the stop neither tainted Gomes' consent to search her purse nor required the suppression of the incriminating statements that she made about Dorais. The district court correctly denied the motion to suppress the statements and the drugs found in Gomes' purse.

AFFIRMED.