Larry INGRAM, Plaintiff,

v.

**CITY OF LOS ANGELES, Officer Calleros, and Officer Juan Arenas and Does 1 to 30, Defendants.**

**No. CV 04–2175 FMC.**

United States District Court, C.D. California.

March 7, 2006.

Eric Siegler, John L. Smaha, Smaha and Daley, San Diego, CA, for Plaintiff.

Rockard J. Delgadillo, City Attorney, Gary G. Geuss, Senior Assistant City Attorney, Cory M. Brente, Assistant City Attorney, Susan Kawala, Deputy City Attorney, Wendy Shapero, Deputy City Attorney, Los Angeles, CA, for Defendants.

## ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

COOPER, District Judge.

This matter is before the Court on Defendants' Summary Judgment Motion (docket # 41). The Court has read and considered the moving, opposition, and re-

ply documents[1] submitted in connection with this Motion. The matter was heard on March 6, 2006, at which time the parties were in receipt of the Court's tentative Order. For the reasons set forth below, the Court grants Defendants' Motion. Summary judgment in favor of all claims is granted in favor of all Defendants.

## I. Objections to Evidence

### A. Arenas Declaration

Plaintiff objects to portions of the Declaration of Juan Arenas.

Plaintiff objects to the declarant's reference to the area in which Plaintiff was stopped as one in which there is a "large amount of criminal activity." He also objects to the declarant's observation that traffic stops can result in "dangerous actions." He objects on the basis that these descriptions are "vague and ambiguous," and he cites Rule 403. This rule does not directly address ambiguity; instead, the Rule allows the exclusion of relevant evidence where the "probative value of the evidence is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading to the jury" or where the presentation of such evidence is a "waste of time" or cumulative. These objections are overruled.

■ Plaintiff's objections to the Declaration as lacking in foundation, not based on personal knowledge, and not being properly authenticated are overruled. *See* Fed.R.Evid. 601, 602, 901. The officer's Declaration sets forth procedures he uses on a daily basis and sets forth what he did on the night that Plaintiff was arrested. These are matters on which he is competent to testify. Plaintiff's objections are overruled.

■ Plaintiff's objections, based on Rule 607 ("Who May Impeach"), contend that the declarant has "misstated the evidence." However, in opposing a summary judgment motion, the nonmoving party must present controverting evidence rather than merely arguing that the moving party has "misstated the evidence." These objections are overruled.

Plaintiff objects to two portions of the Declaration as hearsay. *See* Fed.R.Evid. 801(c). The evidence objected to, in both instances, is not offered for the truth of the matter asserted; rather, it is offered to show the effect on the listener. These objections are overruled.

No portion of the Arenas Declaration places in issue "the content of a writing, recording, or photograph," and therefore objections based on the best evidence rule are overruled. *See* Fed.R.Evid. 1001, 1002.

■ Plaintiff objects to portions of the Declaration as improper expert opinion. *See* Fed.R.Evid. 702. The officer may testify as to his knowledge of the stolen vehicle system. He may also testify, based on his experience, that the rocks he found in the vehicle resembled crack cocaine and that scouring pads (which he also found) are used as a filter when smoking crack cocaine. Plaintiff's objections are overruled.

■ Plaintiff also makes several objections to portions of the Declaration as being improper conclusions of law. Only one statement resembles a conclusion of law.

---

1. Both parties' briefs were thorough and concise in articulating the legal issues before the Court. Defendants' briefs were exceptionally helpful to the Court. As is not always the case with briefs filed with this Court, Defendants' briefs outlined the relevant factual record of the case, cited to binding legal authority while accurately stating the propositions for which these cases stand, and advanced arguments advocating their position without mischaracterizing either the facts or the law.

However, when the declarant refers to a violation of Cal. Health & Safety Code § 11364, he states that he "believed" that Plaintiff had committed a violation of that section. This is not a conclusion of law; rather, it is a statement of the declarant's belief, a subject of which the declarant is uniquely qualified to testify. Plaintiff's objections are overruled.

### B. Fesperman Declaration

Plaintiff objects to two portions of the Fesperman Declaration. Michael Fesperman is a Detective with the Los Angeles Police Department. He has been designated the person most knowledgeable at the LAPD regarding stolen vehicle investigations. His duties require him to read and understand the stolen vehicle system printouts and to have knowledge regarding pawned vehicle [2] entries in that system.

■ Plaintiff objects to the detective's statement that "only a minute fraction" of owners pawn their vehicles and that officers will not encounter pawned vehicle entries on a daily basis. The detective has knowledge of the entries of pawned vehicles into the database. His testimony is not an improper expert opinion. The objection to this statement as "vague and ambiguous" (citing Rule 403) suffers from the same defect noted above in connection with the Arenas Declaration. Plaintiff's objection to this statement is overruled.

■ Plaintiff also objects to the detective's statement that there is no way to replace the word "victim" with "registered owner" for entries regarding a pawned vehicle. Read in context, the detective's statement means that as the database and inquiry system are currently configured, there is no "registered owner" field for a pawned vehicle, and the owner's informa-

tion is therefore listed in the "victim" field. This statement is based on personal knowledge, and it is not an improper expert opinion. Plaintiff's objection to this statement as "misstat[ing] the evidence" (citing Rule 607) suffers from the same defect noted above in connection with the Arenas Declaration. Plaintiff's objection to this statement is overruled.

### II. Uncontroverted Facts

On May 2, 2001, at approximately 12:55 a.m., Los Angeles Police officers Arenas and Calleros were working uniform patrol in a marked black-and-white police vehicle. The officers were assigned to the Newton Division of the Los Angeles Police Department ("LAPD"). Officers Arenas and Calleros were conducting random Department of Motor Vehicle ("DMV") queries of various vehicles, using the mobile digital terminal ("MDT") in their patrol car. The query is a computer check through the DMV's stolen vehicle system ("SVS") to determine whether there are any "wants and warrants" on a vehicle.

At Main and 43rd Streets, the officers saw Plaintiff's gray Chevrolet Beretta bearing California license plate number 2LJN248. When officers use the MDT to run a license plate, the first readout comes from the DMV's SVS. Generally, where the vehicle is not stolen, the computer will read "no hits, no near misses." If the vehicle is stolen or if there is a wanted person associated with the vehicle, the computer will display "inquiry match" and will provide victim information. The computer will then provide information from the DMV regarding the car's registration.

When Officer Calleros ran Plaintiff's license plate, the computer revealed an inquiry match, even though the car was not

---

**2.** As explained below, this case involves a traffic stop of a vehicle that had been pawned. The officers making the stop believed that the vehicle may have been stolen because the owner of the car was listed in a field designated for "victims" in a police database.

stolen. The information that appeared on the MDT was similar to what officers would expect to see when a vehicle was stolen, except that it characterized the vehicle as "pawned." Like a typical stolen vehicle "hit", the information provided included "victim" information and stated that the San Diego Police Department was the agency to be contacted. In his five years as a police officer, Officer Arenas had not ever seen a reference to a "pawned vehicle" when checking a license plate for wants and warrants. Because the vehicle triggered an inquiry match on the state-wide SVS and because the match referenced a "victim," Officer Arenas believed that a crime had been committed.[3]

The officers pulled the vehicle over at a gas station at the intersection of Vernon and Broadway Avenues. Based on the time of night (near 1:00 in the morning), the dangerous location where the stop occurred, and the questionable status of the vehicle, the officers had the occupants exit the vehicle due to their safety concerns. Plaintiff was seated in the front passenger seat of the vehicle. Plaintiff and the driver were ordered out of the vehicle. Officers Calleros spoke with the driver. The driver was arrested for driving without a license. Officer Arenas heard the driver tell Officer Calleros that he was on parole for narcotics.

Officer Arenas then conducted a pat-down search of Plaintiff because there were two persons in the car, because the stop was made in a high-crime area,[4] because traffic stops can be dangerous for officers, because of the information from the SVS, because the driver said he was on parole, and because the stop was made late at night. During the pat-down search, the officer felt an object in Plaintiff's pocket that he recognized by the feel of the object as a crack pipe. Plaintiff was arrested for possession of rock cocaine. Officer Arenas searched the car and found several "off-white solid rocks resembling crack cocaine" inside a Chapstick container. He also found a scouring pad of the kind that is often used when smoking crack cocaine.

Once they arrived at the police station, the officers contacted the San Diego Police Department and learned that the vehicle had not been stolen.[5] Plaintiff was convicted of felony possession of cocaine and misdemeanor possession of a device used for smoking a controlled substance.

Plaintiff's conviction was overturned, however, when the Court of Appeal held that the stop violated the Fourth Amendment. *See California v. Ingram,* 2003 Cal. App. Unpub. LEXIS 7344 (Cal.App.2003) (attached as Ex. 3 to Defendants' Motion). The Court of Appeal reasoned that because the stop was premised solely on the

---

**3.** As the officers later learned, the vehicle was not stolen and the referenced "victim" was merely the registered owner. When someone pawns a vehicle, the pawn shop is required by law to forward a pawn slip to the local police department. The local police department inputs the information into the SVS database. The SVS database has a field for "victim information." In the case of a pawned vehicle, the registered owner's name is input into the "victim information" field.

Officer Arenas had no specific training regarding what the term "pawned vehicle" meant in relation to the state's SVS. Only a minute fraction of owners pawn their vehi-

cles. Patrol officers will not encounter pawned vehicle entries on a daily basis.

Plaintiff had pawned his vehicle and then paid money to retrieve it from pawn.

**4.** Officer Arenas may testify that the area was a high-crime area. He had been on patrol in the area for two years and was familiar with it.

**5.** The MDT printout shows a message that officers should "not arrest or detail based solely on" the information provided. However, this message was not provided until over ten minutes after the officers stopped the vehicle.

information obtained from the MDT, and because that information turned out to be false, the stop violated the Fourth Amendment. In reaching this conclusion, the Court relied on *United States v. Hensley*, 469 U.S. 221, 229, 232, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985), *California v. Willis*, 28 Cal.4th 22, 29–51, 120 Cal.Rptr.2d 105, 46 P.3d 898 (2002), and *California v. Ramirez*, 34 Cal.3d 541, 543–52, 194 Cal.Rptr. 454, 668 P.2d 761 (1983).

### III. Summary Judgment Standard

Summary judgment is proper only where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. Rule Civ. Pro. 56(c); *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The moving party bears the initial burden of demonstrating the absence of a genuine issue of material fact. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Whether a fact is material is determined by looking to the governing substantive law; if the fact may affect the outcome, it is material. *Id.* at 248, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202.

If the moving party meets its initial burden, the "adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Mere disagreement or the bald assertion that a genuine issue of material fact exists does not preclude the use of summary judgment. *Harper v. Wallingford*, 877 F.2d 728 (9th Cir.1989).

The Court construes all evidence and reasonable inferences drawn therefrom in favor of the non-moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505; *Brookside Assocs. v. Rifkin*, 49 F.3d 490, 492–93 (9th Cir.1995).

### IV. Officer Liability Under § 1983

#### A. *Terry* Stop

■ "The Fourth Amendment prohibits 'unreasonable searches and seizures' by the Government, and its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest." *United States v. Arvizu*, 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002) (citing *Terry v. Ohio*, 392 U.S. 1, 9, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968)). Such investigatory stops, often referred to as *"Terry* stops," are justified by "reasonable suspicion" that criminal activity may be afoot. *Arvizu*, 534 U.S. at 273, 122 S.Ct. 744. "Reasonable suspicion is formed by specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity." *United States v. Lopez–Soto*, 205 F.3d 1101, 1105 (9th Cir.2000). Investigative traffic stops, such as the one at issue in this action, are justified where an officer has such a reasonable suspicion. *United States v. Miguel*, 368 F.3d 1150, 1153 (2004). A court looks to the totality of the circumstances to determine whether a stop was justified. *Arvizu*, 534 U.S. at 274, 122 S.Ct. 744.

■ The Ninth Circuit has distinguished between mistakes of fact and mistakes of law when an officer has initiated a traffic stop based on a mistaken belief. Where the stop is based on a mistake of law, the stop violates the Fourth Amendment. *Miguel*, 368 F.3d at 1153. However, where the mistake is one of fact, the stop does not violate the Fourth Amendment "if

the objective facts known to the officer gave rise to a reasonable suspicion that criminal activity was afoot." *Id.* (internal quotation marks and citation omitted). A reasonable, good-faith error regarding the facts, absent a mistake regarding the law, can establish reasonable suspicion. *Id.* at 1153–54.

■ Here, the uncontroverted facts establish that the officers had reasonable suspicion to make the *Terry* stop. Their inquiry regarding the vehicle's license plate came back with information that was confusing, but the information was similar to the report that the officers would receive when a vehicle was stolen. The database upon which they relied stated that the vehicle was "pawned," but also listed "victim" data that would not be expected in the absence of a crime. Based on the information provided to them at the time, the officers reasonably believed that a crime had occurred. They were entitled to stop the vehicle and investigate.

That they later learned that the vehicle was not stolen is of no consequence. At the time of the stop, the facts known to (and articulated by) the officers reasonably led them to believe that the vehicle was stolen and that the persons in the vehicle were not authorized to possess it. The officers were mistaken as to the facts, but not as to the law.

Two Ninth Circuit cases provide guidance on this issue in factually similar situations. First, in *United States v. Dorais,* 241 F.3d 1124 (9th Cir.2001), the Ninth Circuit held that an officer's mistaken belief that a rental car was "overdue" was a mistake of fact. *Id.* at 1131. The officer correctly understood that renters who fail to return their cars within 48 hours after the agreed-upon time are guilty of a misdemeanor; however, the officer was mistakenly informed that the car was over 48 hours overdue when, in fact, it was not. *Id.* As succinctly stated by the Ninth Cir-

cuit: "The officers correctly understood that Hawaii law criminalizes the possession of a rental car more than 48 hours beyond its return time; the officers simply made a mistake of fact as to how long overdue the car was." *Id.*

Such is the case here. The officers did not make the mistake of law that it was illegal to pawn a vehicle, and their belief that it is illegal to steal a car is a correct statement of the law. Rather, the officers mistakenly believed, because of the improvised way pawned vehicles are entered into the SVS, that the subject vehicle was a stolen vehicle.

Second, in *Miguel,* 368 F.3d at 1154, the Ninth Circuit rejected an argument that the officers had made a mistake of law, noting that "[t]hey [correctly] understood that driving an unregistered vehicle is a violation of Arizona law." *Id.* Their belief that Plaintiff's registration had expired when it had not, however, was a mistake of fact. *Id.* This case is especially persuasive in light of the fact that in *Miguel,* as in the present case, the officers' mistake was caused by their reliance on an error contained in a database maintained by the state motor vehicle department. *See id.*

The California Court of Appeal decision holding that the stop violated the Fourth Amendment and overturning Plaintiff's conviction does not compel a contrary result, but it warrants further discussion. At the outset, this Court notes that the decision is not binding on the officers and the City, who were not parties to the state-court criminal action. *Davis v. Eide,* 439 F.2d 1077, 1078 (9th Cir.1971) (holding that a state-court criminal decision had no preclusive effect as to city police officers who were not employed by the state). The Court of Appeal relied on one United States Supreme Court case and two California Supreme Court cases in arriving at its holding that the stop violated the

Fourth Amendment. The federal case upon which the court relied is *United States v. Hensley,* 469 U.S. 221, 229, 232, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985). In *Hensley,* the Supreme Court held that officers could make a *Terry* stop based on a "wanted flyer" issued by another police department so long as the flyer was itself based on reasonable suspicion. *Id.* In that instance, the officers making the stop need not have had reasonable suspicion independent of the flyer. *Hensley* does not address situations in which officers have, based on a mistake of fact, a reasonable suspicion to make a stop.

The Court of Appeal also held, relying on two California Supreme Court decisions, *California v. Ramirez* and *California v. Willis,* that police are not entitled to "rely on erroneous information provided through official law enforcement channels," even where such reliance is in good faith. *California v. Ingram,* 2003 Cal.App. Unpub. LEXIS 7344 at *11 (Cal.App.2003). In *Ramirez,* a criminal defendant was arrested without probable cause based on a recalled warrant that the officer reasonably believed to be outstanding. *Ramirez,* 34 Cal.3d at 543–44, 194 Cal.Rptr. 454, 668 P.2d 761. A search incident to arrest led to discovery of illegal drugs on the defendant's person. *Id.* at 544, 194 Cal.Rptr. 454, 668 P.2d 761. The defendant moved to suppress the drugs, and the court held that because the arrest was made without probable cause, the fruits of the search incident to arrest had to be suppressed pursuant to the exclusionary rule. *Id.* at 552, 194 Cal.Rptr. 454, 668 P.2d 761. The court did so despite acknowledging that the arresting officer "no doubt acted in good faith reliance on the information" regarding an outstanding warrant. *Id.* However, the court reasoned that, because "the recall of the warrant was, or should have been, within the 'collective knowledge' of the police," the Fourth Amendment re-

quired suppression. *Id.* at 547, 194 Cal. Rptr. 454, 668 P.2d 761.

In *California v. Willis,* the court made a similar holding in a case in which evidence was discovered when officers searched a home without a warrant based on a defendant's parole status. *Willis,* 28 Cal.4th 22, 22, 120 Cal.Rptr.2d 105, 46 P.3d 898 (2002). Although the officers acted in good faith, the court held that the rationale behind the exclusionary rule—to deter unconstitutional police conduct—required suppression of the fruits of the search. *Id.* at 29–30, 120 Cal.Rptr.2d 105, 46 P.3d 898. The court held that where the individual who caused the mistake to be made is "an adjunct to the law enforcement team," the rationale behind the exclusionary rule is served, and it must be applied to suppress the evidence obtained from the unlawful search. *Id.* at 38–39, 120 Cal.Rptr.2d 105, 46 P.3d 898.

These cases have limited applicability in a civil suit against an individual officer for damages. In a criminal action, it is imperative that the rights of the accused be protected. The exclusionary rule was created to ensure that police would be deterred from acting in an unconstitutional manner by virtue of the knowledge that any evidence seized would be tainted and inadmissible. In such a context, it is logical to hold police officers accountable for the collective knowledge of the entire law enforcement team. However, in a § 1983 action individual civil liability is at issue. In such a situation, the officer can be held accountable—and therefore subject to personal liability—only for his or her own knowledge. Indeed, the Supreme Court has recognized this distinction. *See United States v. Hensley,* 469 U.S. 221, 232, 105 S.Ct. 675, 83 L.Ed.2d 604 (1985) (noting, in dictum, that where an officer relies on a wanted flyer from a neighboring police department that is not supported by rea-

sonable suspicion, a constitutional violation occurs, but the officer "may have a good-faith defense to any civil suit" notwithstanding the constitutional violation).

Accordingly, as set forth above, Plaintiff has failed to establish a triable issue of fact as to his claim based on the stop.

## B. Plaintiff and the Driver Ordered Out of the Vehicle

■ The uncontroverted facts establish that the officer's actions in ordering Plaintiff out of the vehicle did not violate the Fourth Amendment. Where a traffic stop is based on reasonable suspicion, an officer may order the occupants to exit the vehicle notwithstanding that there is no reason to suspect foul play from the vehicle's occupants. *See Pennsylvania v. Mimms,* 434 U.S. 106, 111, 98 S.Ct. 330, 333, 54 L.Ed.2d 331 (1977) (noting that compliance with such an order is a "mere inconvenience" rather than a "serious intrusion" and balancing that inconvenience with concerns of officer safety). Accordingly, Plaintiff has failed to establish a triable issue of fact as to a Fourth Amendment violation on the basis of the order to exit the vehicle.

## C. Pat–Down For Weapons

During a *Terry* stop, "[w]hen an officer is justified in believing that the individual whose suspicious behavior he is investigating at close range is armed and presently dangerous to the officer or to others," the officer may conduct a pat-down search "to determine whether the person is in fact carrying a weapon." *Terry,* 392 U.S. at 24, 88 S.Ct. 1868.

■ The purpose of the pat-down search is to permit an officer to pursue the investigation without fear of violence; therefore, the scope of the search is "limited to that which might be used to harm the officer or others nearby." *Minnesota v. Dickerson,* 508 U.S. 366, 373, 113 S.Ct. 2130, 124 L.Ed.2d 334 (1993) (internal cita-

tions and quotations omitted). Nevertheless, officers may lawfully seize contraband they incidentally discover in "plain touch" during a *Terry* frisk. *Id.*

■ In *Dickerson,* the Supreme Court established the "plain touch" or "plain feel" concept, analogizing it to the familiar "plain-view" doctrine. *Id.* at 375–76, 113 S.Ct. 2130. Under the "plain-view" doctrine, an officer may make a warrantless seizure of an object in plain view if the officer is lawfully in the position from which he or she views the object, the object's incriminating character is immediately apparent, and the officer has a lawful right to access the object. *Id.* at 375, 113 S.Ct. 2130. Therefore, the "plain-feel" doctrine is stated as follows:

> If a police officer lawfully pats down a suspect's outer clothing and feels an object whose contour or mass makes its identity immediately apparent, there has been no invasion of the suspect's privacy beyond that already authorized by the officer's search for weapons; if the object is contraband, its warrantless seizure would be justified by the same practical considerations that inhere in the plain-view context.

*Id.* at 375–76, 113 S.Ct. 2130.

*Dickerson* requires that the officer conducting a pat-down search have probable cause to believe the item identified by plain touch is incriminating evidence. *Dickerson,* 508 U.S. at 376, 113 S.Ct. 2130, 124 L.Ed.2d 334 ("Regardless of whether the officer detects the contraband by sight or by touch ... the Fourth Amendment's requirement that the officer have probable cause to believe that the item is contraband before seizing it ensures against excessively speculative seizures."). To give rise to probable cause, the incriminating character of the object must be immediately identifiable: it must be one "whose con-

tour or mass makes its identity immediately apparent." *Id.*

■ The uncontroverted facts establish that Officer Arenas was justified in his belief that Plaintiff might be armed. He was found in a high-crime area,[6] late at night, in a vehicle that appeared to the officers as if it might have been stolen. Therefore, he was entitled to perform a pat-down search for weapons.

■ In performing the pat-down search, the uncontroverted facts establish that the officer felt an object which, based on its contour and mass and based on his experience with such contraband, he correctly believed to be a crack pipe. *See* Arenas Declaration at ¶ 10 ("During the patdown search, I felt a cylindrical-shaped object in an outside pocket of Plaintiff's jacket. Believing the object to be a smoking device or pipe, I removed the object from Plaintiff's pocket. The object was a glass pipe that was burned on one end and was used to smoke crack cocaine.") The uncontroverted facts establish that the officer recognized this object by its "plain feel."

Accordingly, Plaintiff has failed to establish a triable issue of fact as to a Fourth Amendment violation on the basis of the pat-down search and the seizure of the crack pipe.

### D. Arrest[7] and Search Incident to Arrest

■ The seizure of the crack pipe established probable cause to arrest Plaintiff on the paraphernalia charge. Upon Plaintiff's arrest, the officers were permitted, consistent with the Fourth Amendment, to search the passenger compartment of the vehicle. *New York v. Belton,* 453 U.S. 454, 460, 101 S.Ct. 2860 (1981). The uncontroverted facts establish that Officer Arenas' search was within the scope of that permitted by the Fourth Amendment. The search of the passenger compartment led to the seizure of crack cocaine, which provided probable cause to arrest on the possession charge. Accordingly, Plaintiff has failed to establish a triable issue of fact as to a Fourth Amendment violation on the basis of false arrest or the search of the vehicle incident to his arrest.

### E. Preservation of Evidence

■ Where a failure to collect and preserve material, exculpatory evidence is motivated by bad faith, an officer violates the due process rights of the accused. *United States v. Martinez–Martinez,* 369 F.3d

---

**6.** Despite Plaintiff's insistence to the contrary, Defendants do not link the fact that the area is a "high-crime" area with the fact that the area is predominantly populated by Hispanic and African–American individuals. Defendants have not stated or suggested that such a causal relationship exists. Instead, they offer as evidence the declaration of Officer Arenas. Police officers who regularly patrol in a particular neighborhood may competently testify that the neighborhood is a "high-crime" area. *See* Arenas Decl. ¶ 9 ("[T]here is a large amount of criminal activity in the vicinity of Broadway and Vernon. I had been patrolling the area for two years and was familiar with it.").

**7.** This Court's earlier dismissal Order stated that the § 1983 claim did not appear to be based on false arrest and false imprisonment. State-law claims for false arrest and false imprisonment were dismissed for failure to comply with the state tort claims procedure. Plaintiff argues that his § 1983 claims are based in part on false arrest and false imprisonment, correctly noting that his § 1983 claim incorporated by reference the preceding paragraphs of the Complaint, including setting forth the factual basis underlying his state-law false arrest and false imprisonment claims. For that reason, the Court addresses whether arrest was supported by probable cause in this section. The Court addresses the false imprisonment claim separately, *infra.*

1076, 1086–88 (9th Cir.2004) (citing *Arizona v. Youngblood,* 488 U.S. 51, 58, 109 S.Ct. 333, 102 L.Ed.2d 281 (1988)). Evidence is "material" if it "possess[es] an exculpatory value that was apparent before the evidence was destroyed, and [was] of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *California v. Trombetta,* 467 U.S. 479, 488–89, 104 S.Ct. 2528, 81 L.Ed.2d 413 (1984).

 Plaintiff contends that the officers failed to preserve the fingerprint evidence on the Chapstick container and that the evidence would have shown that the crack rocks found within were not his. However, Plaintiff has failed to offer evidence that the officers' handling of the container actually tainted the fingerprint evidence on the container. Additionally, there is no evidence that the container (or any fingerprint evidence to be found thereon) was destroyed. Moreover, it was not apparent that the evidence described would be exculpatory. Extensive analysis of fingerprint evidence is generally required; officers conducting searches of vehicles cannot be expected to know the result of such analysis before it is conducted. In any event, Plaintiff has offered no evidence that the officers acted in bad faith.

Accordingly, Plaintiff has failed to establish a triable issue of fact as to his failure to preserve evidence claim.

### F. False Imprisonment

 Generally, police officers cannot be liable for false imprisonment. They are not liable for damages incurred after a prosecutor files a criminal complaint against an arrestee because the prosecutor is presumed to exercise independent judgment in the filing of criminal complaints. *Smiddy v. Varney,* 803 F.2d 1469, 1471 (9th Cir.1986). An exception to this general rule exists, and a § 1983

plaintiff may rebut this presumption where the prosecutor is subjected to unreasonable pressure by the police officers, where the officers knowingly withhold relevant information with the intent to harm the arrestee, or where the officers knowingly supply false information. *Id.* Plaintiff has failed to offer any evidence to rebut the general presumption. The uncontroverted facts establish that the officers noted in their report that "a subsequent check with San Diego PD confirmed there was no crime report affiliated with the vehicle." Such a statement is incompatible with the proposition that the officers subjected the prosecutor to unreasonable pressure, withheld information, or provided false information.

Accordingly, Plaintiff has failed to establish a triable issue of fact as to a Fourth Amendment violation on the basis of false imprisonment.

### V. *Monell* Liability

 Because Plaintiff has failed to establish a triable issue of fact as to any of his constitutional claims, summary judgment must be granted as to the City on his *Monell* claims. *See City of Los Angeles v. Heller,* 475 U.S. 796, 799, 106 S.Ct. 1571, 89 L.Ed.2d 806 (1986) ("If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point.").

### VI. Conclusion

For the reasons set forth in this Order, the Court grants Defendants' Summary Judgment Motion (docket # 41). Summary judgment in favor of all claims is granted in favor of all Defendants.

The Court will enter the proposed judgment lodged by Defendants.