NOT FOR PUBLICATION

FILED

UNITED STATES COURT OF APPEALS

JUL 24 2020

MOLLY C. DWYER, CLERK
U.S. COURT OF APPEALS

FOR THE NINTH CIRCUIT

| | |
|---|---|
| UNITED STATES OF AMERICA, Plaintiff-Appellee, v. TAQUARIUS KAREAM FORD, AKA Cameron, Defendant-Appellant. | Nos. 17-30231 18-30053 D.C. No. 3:14-cr-00045-HZ-1 MEMORANDUM* |

Appeal from the United States District Court
for the District of Oregon
Marco A. Hernandez, Chief District Judge, Presiding

Argued and Submitted July 7, 2020
Portland, Oregon

Before: BENNETT and MILLER, Circuit Judges, and PEARSON,** District Judge.

Taquarius Ford appeals from his jury convictions and sentences for one count of conspiracy to engage in sex trafficking by force, fraud, or coercion, two counts of sex trafficking by force, fraud, or coercion, and one count of obstructing

---

\* This disposition is not appropriate for publication and is not precedent except as provided by Ninth Circuit Rule 36-3.

\*\* The Honorable Benita Y. Pearson, United States District Judge for the Northern District of Ohio, sitting by designation.

the enforcement of a sex trafficking statute. He also challenges the district court's denial of two pretrial motions, a motion for discovery related to his "selective enforcement and/or prosecution" claim and a motion to suppress evidence.[1]

We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

1. We review de novo whether the district court applied the correct discovery standard. *United States v. Sellers*, 906 F.3d 848, 851 (9th Cir. 2018). And we review the district court's determination that a defendant failed to meet the requisite discovery standard for abuse of discretion. *Id.*

Ford argues that, because he asserted a selective enforcement claim (as opposed to a selective prosecution claim), the district court applied the wrong discovery standard under *United States v. Armstrong*, 517 U.S. 456 (1996). He contends that the district court should have applied the more lenient discovery standard in *Sellers*.[2] Alternatively, Ford argues that even if it was proper for the

---

[1] Ford also appealed the personal money judgment entered against him, but he later conceded that his argument challenging the money judgment is foreclosed by binding precedent.

[2] While we make no finding as to whether *Sellers* applies to this case, we note that language in *Sellers* could be read as limiting its application to cases involving reverse-sting operations. *See, e.g.*, 906 F.3d at 850, 854, 855 ("We hold that in these stash house reverse-sting cases, claims of selective enforcement are governed by a less rigorous standard than that applied to claims of selective prosecution under *United States v. Armstrong*[.]"; "The Third and Seventh Circuits have already come to the conclusion that *Armstrong*'s rigorous discovery standard does not apply in the context of selective enforcement claims involving stash house reverse-sting operations."; "[W]e join the Third and Seventh Circuits and hold that *Armstrong*'s rigorous discovery standard for selective prosecution cases does not

2

district court to apply *Armstrong*, the court abused its discretion in determining that he failed to meet the requisite discovery standard.

Though Ford attempts to style his claim on appeal as one for selective enforcement, the record does not support his characterization. Ford's motion did not make any distinction between selective enforcement and selective prosecution claims. His motion quoted *Armstrong* as providing the applicable standard, and he primarily argued that he was improperly *selected for prosecution* because he is a black male. Considering his motion as a whole, it was proper for the district court to construe his claim as one for selective prosecution. *Cf. Sellers*, 906 F.3d at 851 n.5 (construing claim as a selective enforcement claim even though it was at times styled as a selective prosecution claim because "Sellers takes issue with how he was targeted at the outset of the operation"). Accordingly, the district court applied the correct discovery standard under *Armstrong*.

Under *Armstrong*, to establish he is entitled to discovery on a selective prosecution claim, Ford had to produce "some evidence tending to show the existence of the essential elements of the defense, discriminatory effect and discriminatory intent." 517 U.S. at 468 (quotation marks and citation omitted). The district court did not abuse its discretion in finding that Ford failed to present

---

apply strictly to discovery requests in selective enforcement claims like Sellers's.").

3

some evidence of discriminatory intent. There is no indication that the government targeted Ford because he is a black male. The officers did not know Ford would be present in the hotel room and only arrested him after he was identified as a sex trafficker by the victim. Moreover, the government filed sworn declarations from law enforcement and prosecutors denying that race and gender played any part in their decision to prosecute Ford. Given Ford's lack of evidence, the circumstances surrounding Ford's arrest, and the government's strong evidence, the court did not abuse its discretion in denying Ford's motion on the basis that he failed to offer some evidence of discriminatory intent.

2. De novo review applies to the denial of a motion to suppress, and clear error applies to the underlying factual findings. *See United States v. Dorais*, 241 F.3d 1124, 1128 (9th Cir. 2001). "The determination of whether a seizure exceeds the bounds of a *Terry* stop and becomes a *de facto* arrest is reviewed *de novo*." *United States v. Torres-Sanchez*, 83 F.3d 1123, 1127 (9th Cir. 1996). De novo review also applies to whether a search warrant is overbroad "for failing to particularly describe the items to be seized." *United States v. Washington*, 797 F.2d 1461, 1471 n.14 (9th Cir. 1986).

The district court correctly determined that Ford lacked standing to challenge the officers' entry into the hotel room under the Fourth Amendment because any reasonable expectation of privacy Ford had in the room, which had

been rented by Ford's co-defendant Konia Prinster, ended when the hotel manager informed Ford and Prinster that they were being evicted, and it was well past their check-out time. *See Dorais*, 241 F.3d at 1128 ("This court has held that a defendant has *no* reasonable expectation of privacy in a hotel room when the rental period has expired and the hotel has taken affirmative steps to repossess the room.").

The district court properly determined that Ford's detention was not a de facto arrest without probable cause. Considering the totality of the circumstances, the officers had reasonable suspicion to detain Ford while they investigated his connection to the suspected prostitution activity, and it was reasonable for the officers to handcuff Ford for safety reasons while they continued their investigation, as they were outnumbered. *See United States v. Baron*, 860 F.2d 911, 914 (9th Cir. 1988) ("In determining whether an investigative detention has ripened into an arrest, we consider the totality of the circumstances."). Even assuming Ford's detention was an arrest without probable cause, the evidence seized after the officers entered the hotel room (which would include the electronic devices), was not the product of that alleged illegal arrest and should not be suppressed.

The district court correctly determined that the 2012 search warrant was not overbroad in violation of the Fourth Amendment. In *Washington*, we considered

language in a warrant very similar to the language in the warrant at issue here and found that it was sufficiently particular. 797 F.2d at 1472. Thus, under *Washington*, the 2012 search warrant satisfies the Fourth Amendment's particularity requirement.

3.　　We review Ford's challenge to the admission of certain trial testimony for plain error as he failed to object to the testimony below and the record does not support his argument that an objection would have been "futile." Under plain error review, Ford must show that "(1) there is an 'error'; (2) the error is 'clear or obvious, rather than subject to reasonable dispute'; (3) the error 'affected the appellant's substantial rights, which in the ordinary case means' it 'affected the outcome of the district court proceedings'; and (4) 'the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *United States v. Marcus*, 560 U.S. 258, 262 (2010) (quoting *Puckett v. United States*, 556 U.S. 129, 135 (2009)).

Even assuming it was error to admit all of the challenged testimony and the error was obvious, Ford fails to show that there is "a reasonable probability that the error affected the outcome of the trial," *Marcus*, 560 U.S. at 262, given the overwhelming evidence supporting his guilt. *See United States v. Morfin*, 151 F.3d 1149, 1151 (9th Cir. 1998) (per curiam) (holding that the error was not prejudicial "[b]ecause the direct and circumstantial evidence against [the defendant] was

6

overwhelming"). Thus, the district court did not plainly err by failing to sua sponte strike the challenged testimony.

4.    De novo review applies to "whether the jury instructions accurately define the elements of a statutory offense . . . ." *United States v. Hicks*, 217 F.3d 1038, 1045 (9th Cir. 2000). Abuse of discretion applies to a "district court's ultimate formulation of the instructions." *Id.*

The district court did not give an incomplete definition of "fraud" in the sex trafficking instructions by failing to include the materiality concept. Viewing the entirety of the district court's instructions, the concept of materiality that Ford argues should have been included was in fact included in the instructions. The court's definition of fraud read together with its instructions on counts 2 and 3 informed the jury that the government had to prove that Ford knew that the "fraud" (defined as "an instance or an act of trickery or deceit especially when involving misrepresentation") "*would be used to cause* [T.H. and A.C.W.] to engage in a commercial sex act."

The district court did not err in declining to define "force" in the sex trafficking instruction for count 2 because it is a common term that a jury would readily understand. *See, e.g.*, *Hicks*, 217 F.3d at 1045 (holding that the court did not err in failing to define "statement" and "false" because, among other things, these are common terms that a jury would understand). We also reject Ford's

7

argument that the district court should have provided the jury with the definition of "force" set forth in *Johnson v. United States*, 559 U.S. 133 (2010). *Johnson* defined "force" as used in a statute that is irrelevant here. *See id.* at 140–42.

5.    Ford argues that the district court failed to comply with Federal Rule of Criminal Procedure 32(i)(3)(B) because it did not resolve during sentencing four objections he made to the facts stated in the presentence report ("PSR"). Because Ford did not object at sentencing to the district court's compliance with Rule 32, plain error review applies.[3] *See United States v. Wijegoonaratna*, 922 F.3d 983, 989 (9th Cir. 2019) ("[W]here a defendant does not object at sentencing to a

---

[3] Ford did not specifically object at sentencing to the district court's compliance with Rule 32. Ford also failed to raise an objection even though the court specifically asked Ford whether he had any other issues after it had imposed the sentence. After imposing the sentence, the district court asked Ford's counsel whether "there [is] anything else from your perspective?" And his counsel responded, "I think that concludes everything."

During oral argument, Ford's counsel argued for the first time that statements made by Ford himself during sentencing sufficiently raised a Rule 32 objection that the court had to resolve—whether Ford raped E.H. Oral Argument at 1:25–1:48, *United States v. Ford*, Nos. 17-30231, 18-30053 (9th Cir. July 7, 2020). Ford waived this argument as he failed to raise it in his briefs. *See Butler v. Curry*, 528 F.3d 624, 642 (9th Cir. 2008) (finding argument waived when raised for the first time at oral argument). But even were the argument not waived, it is doubtful whether Ford's general statement denying that he had raped any victims, without any reference to the PSR and without referring to E.H. specifically, would have been sufficient to raise a Rule 32 objection. *See Whittaker Corp. v. Execuair Corp.*, 953 F.2d 510, 515 (9th Cir. 1992) ("[An] argument must be raised sufficiently for the trial court to rule on it." (quoting *In re E.R. Fegert, Inc.*, 887 F.2d 955, 957 (9th Cir. 1989))). Ford stated during sentencing that he "never raped [T.H.], . . . never, never, none of these women."

district court's compliance with [Rule 32], we review for plain error."). Under Rule 32, the district court must "for any disputed portion of the presentence report . . . rule on the dispute or determine that a ruling is unnecessary either because the matter will not affect sentencing, or because the court will not consider the matter in sentencing." Fed. R. Crim. P. 32(i)(3)(B).

The district court erred because it did not resolve Ford's objections to the PSR during sentencing. But the error does not rise to the level of plain error because Ford fails to show that "there is a reasonable probability that he would have received a different sentence had the district court not erred." *United States v. Christensen*, 732 F.3d 1094, 1102 (9th Cir. 2013).

Regarding E.H.'s and C.H.'s hearsay statements in the PSR, including that Ford raped E.H., it was entirely appropriate for the district court to rely on the statements as they were supported, at the very least, "by 'some minimal indicia of reliability.'" *United States v. Berry*, 258 F.3d 971, 976 (9th Cir. 2001) (quoting *United States v. Petty*, 982 F.2d 1365, 1369 (9th Cir. 1993)). Regarding the other factual disputes that the court failed to resolve (i.e., that Ford urged Prinster to have an abortion and trafficked over 40 victims), Ford fails to point to any parts of the record that show the district court relied on those facts in sentencing him. Because there is no indication that these facts had any bearing on Ford's sentence, Ford fails to show that he was prejudiced by the court's failure to rule on them.

9

Thus, the district court's failure to comply with Rule 32 does not rise to the level of plain error.

6. De novo review applies to a district court's interpretation of the sentencing guidelines. *See United States v. Wei Lin*, 841 F.3d 823, 825 (9th Cir. 2016). Ford argues that the district court erred in calculating the total offense level by treating four victims as if each of them had been named in separate substantive counts and assigning each of those counts an adjusted offense level of 38.[4] He argues that because these victims were named in the conspiracy count, the court should have treated them as if they were named in separate conspiracy counts and assigned each of the counts the much lower offense level corresponding with the offense level assigned to the conspiracy count.

Section 2G1.1(d)(1) of the United States Sentencing Guidelines provides: "If the offense involved more than one victim, Chapter Three, Part D (Multiple Counts) shall be applied as if the promoting of a commercial sex act or prohibited sexual conduct in respect to each victim had been contained in a separate count of conviction." Application Note 5 to that section further explains:

> For the purposes of Chapter Three, Part D (Multiple Counts), each person transported, persuaded, induced, enticed, or coerced to engage in, or travel to engage in, a commercial sex act or prohibited sexual conduct is to be treated as a separate victim. . . . In addition, subsection

---

[4] We note that one victim (D.J.) was not named in the conspiracy count. But Ford does not raise this as an issue, and his own argument treats D.J. as if she were named in the conspiracy count.

> (d)(1) directs that if the relevant conduct of an offense of conviction includes the promoting of a commercial sex act or prohibited sexual conduct in respect to more than one victim, whether specifically cited in the count of conviction, each such victim shall be treated as if contained in a separate count of conviction.

U.S.S.G. § 2G1.1 cmt. n.5.

Because the four victims were victims of the offense conduct charged in the substantive sex trafficking counts—that is, Ford recruited them knowing that fraud, force, or coercion would be used to cause them to engage in commercial sex acts in violation of 18 U.S.C. § 1591(a)(1) and (b)(1)—it was proper for the court to treat each victim as if they had been named in separate substantive counts and to assign each of those counts an adjusted offense level of 38 (the same adjusted offense level assigned to the substantive sex trafficking counts 2 and 3). Nothing in U.S.S.G. § 2G1.1(d)(1) or Application Note 5 indicates that, if a victim is named in a conspiracy count (but was also a victim of the conduct charged in the substantive count), then the court must treat the victim as if she were contained in a separate conspiracy count.

We also reject Ford's argument that the district court erred in finding that E.H. and C.H. were victims for sentencing purposes because it was improper for the court to rely on their unreliable hearsay statements in the PSR. The court properly relied on the hearsay statements because, again, they were, at the very least, "accompanied by 'some minimal indicia of reliability.'" *Berry*, 258 F.3d at

11

976 (quoting *Petty*, 982 F.2d at 1369). E.H.'s and C.H.'s hearsay statements were partly corroborated by Prinster's testimony and were also consistent with other evidence admitted at trial.[5]

7. Ford argues that the district court imposed a substantively unreasonable sentence. The substantive reasonableness of a sentence is reviewed for abuse of discretion. *See United States v. Carty*, 520 F.3d 984, 993 (9th Cir. 2008) (en banc).

We first reject Ford's contention that the district court failed to consider his argument that sentencing disparities between him and Prinster justified a downward variance. The record clearly shows that the district court considered this argument. Moreover, there were significant and obvious differences between him and Prinster, including that he set up the sex trafficking scheme, he made the millions of dollars from the scheme, Prinster testified for the government, and Prinster either was or may have been a victim.

---

[5] Over the government's objection, the district court agreed with Ford that the base offense level for the conspiracy count should be 14 (as opposed to 34) under *United States v. Wei Lin*, 841 F.3d 823 (9th Cir. 2016). The government argues on appeal that *Wei Lin* is not controlling because it is distinguishable on the facts. We do not reach the issue of whether *Wei Lin* applies to this case as it is unnecessary given our holding that the district court's total offense level calculation was proper, even using the lower base offense level of 14 for the conspiracy count. But we note that the government's argument appears to have some force as, unlike in *Wei Lin*, the conspiracy count here referenced 18 U.S.C. § 1591(a)(1), (b)(1), and 18 U.S.C. § 1594(c), and Ford was convicted of two sex trafficking counts that each carried fifteen-year minimum sentences.

The record also shows that the district court engaged in a reasonable and meaningful consideration of the 18 U.S.C. § 3553(a) sentencing factors. That the court departed downward significantly from the guideline range of life imprisonment and the PSR's recommended sentence of 55 years, and imposed a sentence of 400 months, further shows that it sought to impose a sentence that was not greater than necessary under the circumstances. The district court did not abuse its discretion in imposing the sentence.

**AFFIRMED.**