**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Joe Davis TWILLEY, Defendant–Appellant.**

**No. 99–50338.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted June 5, 2000

Filed Aug. 14, 2000

John P. Martin, Talcott, Lightfoot, Vandevelde Sadowksy, Medvene & Levine, Los Angeles, CA, for defendant-appellant.

Tom Warren, Assistant United States Attorney, Criminal Division, Los Angeles, CA, for plaintiff-appellee.

Before: FERGUSON, BOOCHEVER and REINHARDT, Circuit Judges.

BOOCHEVER, Circuit Judge:

Joe Davis Twilley appeals from his conviction for possession with intent to distribute cocaine. We reverse, because his motion to suppress evidence should have been granted.

## FACTS

On March 5, 1998, Officer Kenneth Weeks of the Barstow, California police department was assigned to a California Highway Patrol Narcotics Task Force on Interstate 15 near Barstow and the Nevada border. Officer Weeks, who was parked on the side of the highway, noticed a Dodge Intrepid traveling north with only one Michigan license plate, on the rear of the car. Officer Weeks pulled out into traffic and followed the car. Officer Weeks was aware that California law required cars to display "every license plate issued by this State or any other jurisdiction within ... the United States." Cal. Veh.Code § 5202. Officer Weeks "believed that Michigan issued two plates, which would make it a violation of California law" to have only a rear license plate. He did not know Michigan law, but "[b]ecause an awful lot of states issue two plates" assumed this was the case in Michigan as well. He therefore pulled the Intrepid over.

When Officer Weeks walked over to the car, he saw the driver, Laurie Ann Simmons, the front seat passenger, Anthony Frank Jones, and appellant Joe Davis Twilley, who was lying down in the back seat without a seatbelt. Officer Weeks told Simmons "I didn't realize this was a rental car. The reason I stopped you was because you have no front license plates. Does Michigan issue two plates?" Simmons said "No, it don't." (Simmons was correct: Michigan issues only one license plate.) Officer Weeks did not address the license plate issue again.

Officer Weeks continued to question the Intrepid's occupants. He asked Simmons about the rental agreement, which she said was in the name of her "uncle," appellant Twilley. (The rental agreement was actually in the name of another person who was not in the vehicle.) Officer Weeks ran a check on Simmons' Michigan license. He then spoke to Twilley, who was lying down because he felt ill, about not wearing a seatbelt. He further questioned all three about the reason for their trip to California, their destination, and their stay in the state. Because he received conflicting answers, Officer Weeks began to suspect that the vehicle carried narcotics.

Officer Weeks called for backup. After some further conversation, he told Simmons "You're out of here. Okay." but then immediately continued his questioning, asking her if there were drugs in the car; she said no. The backup car arrived. Officer Weeks asked Simmons if he could search the car, and she consented.

Officer Weeks then asked Twilley if there were drugs in the car. Twilley said no. Officer Weeks told Simmons and Twilley to sit in his patrol car. He then told the backup officer to contact a K-9 unit with a drug-sniffing dog. Officer Weeks, who had noticed an air freshener and a pager in the car, asked Jones if he could search the car. Jones consented, and went to sit with the others in the patrol car.

A drug-sniffing dog alerted to the rear of the car, and Weeks and the other officers began the search with the trunk, where they found twelve packages containing approximately twelve kilograms of cocaine. All three occupants of the Intrepid were arrested.

In March 1998, Twilley, Jones, and Simmons were indicted on one count of possession with intent to distribute cocaine, in

violation of 21 U.S.C. § 841(a)(1). They filed a motion to suppress the cocaine. After a hearing, the district court denied the motion, finding that Twilley did not have standing to challenge the search and that the stop of the vehicle was supported by probable cause.

The government dismissed the indictment as to Simmons and Jones in September 1998. Twilley then filed an ex parte application for a continuance of the trial and for the appointment of an expert statistician to investigate whether the traffic stop was race-based. The court denied the application.

Twilley unsuccessfully moved for reconsideration of the denial of the motion to suppress. Following trial, he was found guilty by a jury, and sentenced to a 195–month incarceration.

## ANALYSIS

■■■ Under the Fourth Amendment, government officials may conduct an investigatory stop of a vehicle only if they possess "reasonable suspicion: a particularized and objective basis for suspecting the particular person stopped of criminal activity." *United States v. Thomas*, 211 F.3d 1186, 1189 (9th Cir.2000) (quotations omitted); *see United States v. Lopez–Soto*, 205 F.3d 1101, 1105 (9th Cir.2000) (Fourth Amendment requires reasonable suspicion, not probable cause, for traffic stop); *see also United States v. Wallace*, 213 F.3d 1216, 1219 n. 3 (9th Cir.2000) (as amended) (probable cause will also support traffic stop). Such reasonable suspicion "requires specific, articulable facts which, together with objective and reasonable inferences, form a basis for suspecting that a particular person is engaged in criminal conduct." *Thomas*, 211 F.3d at 1189 (quotations omitted). This court reviews de novo a district court's finding of reasonable suspicion. *Id.*

### I. *Standing*

■■■ The government challenges Twilley's standing to challenge the search of the trunk and the seizure of the packages of cocaine, because Twilley, a passenger, did not demonstrate a property or possessory interest in the Dodge Intrepid. The car was rented by a third party, who was not present, and who had rented the car for Twilley's wife. Twilley claimed the renter knew he would have access to the vehicle, but the district court found Twilley was not credible, and concluded he did not have standing to challenge the search of the vehicle. We review de novo the legal question whether Twilley has standing. *See United States v. Kovac*, 795 F.2d 1509, 1510 (9th Cir.1986).

■■■ As a passenger, Twilley "has no reasonable expectation of privacy in a car that would permit [his] Fourth Amendment challenge to a search of the car." *United States v. Eylicio–Montoya*, 70 F.3d 1158, 1162 (10th Cir.1995). But Twilley challenged the initial stop, and "a passenger may challenge a stop of a vehicle on Fourth Amendment grounds even if she has no possessory or ownership interest in the vehicle." *Id.* at 1164; *see United States v. Garcia*, 205 F.3d 1182, 1187–88 (9th Cir.2000), *petition for cert. filed* (U.S. June 5, 2000) (No. 99–10021); *United States v. Rodriguez*, 869 F.2d 479, 482–83 (9th Cir.1989) (each analyzing passenger's challenge to stop of vehicle without addressing standing issue). Further, while Twilley does not have standing to challenge the search directly, "if the defendant could establish that the initial stop of the car violated the Fourth Amendment, then the evidence that was seized as a result of that stop would be subject to suppression as 'fruit of the poisonous tree.'" *Eylicio–Montoya*, 70 F.3d at 1163–64; *see United States v. Kimball*, 25 F.3d 1, 5 (1st Cir. 1994) (because passenger's interests are affected when vehicle is stopped, he has standing to challenge the stop and if stop was illegal, evidence may be excluded as fruit of poisonous tree).

We agree with the Tenth Circuit that Twilley has "standing to seek suppression of evidence discovered in a vehicle as the fruit of an unlawful stop." *Eylicio–Montoya*, 70 F.3d at 1162. Our next inquiry is

whether the stop was unconstitutional. If it was, we must then consider whether the subsequent search was tainted by the illegality of the stop.

## II. *Reasonable suspicion*

■ The district court concluded that Officer Weeks mistakenly believed that the Intrepid violated California law by displaying only one Michigan plate, and that Weeks was unfamiliar with Michigan law, which requires only one plate. Because his mistake of law was "reasonable," the court concluded that Weeks had probable cause to believe that the car was in violation of the traffic code, and the stop itself was reasonable.

■ But in this circuit, a belief based on a mistaken understanding of the law cannot constitute the reasonable suspicion required for a constitutional traffic stop. "Reasonable suspicion is formed by specific, articulable facts which, together with objective and reasonable inferences, form the basis for suspecting that the particular person detained is engaged in criminal activity." *Lopez–Soto,* 205 F.3d at 1105. In *Lopez–Soto,* a police officer stopped the defendant's car because he could not see a registration sticker on the rear of the vehicle. Although the officer believed that such a visible registration sticker was required by law-and had been so instructed at the police academy-the law actually required the sticker to be affixed to the windshield. The officer, like Officer Weeks in this case, stopped the car "because he held a mistaken view of the law." *Id.* at 1105. A suspicion based on such a mistaken view of the law cannot be the reasonable suspicion required for the Fourth Amendment, because "the legal

justification [for a traffic stop] must be objectively grounded." *Id.* (quotations omitted). In other words, if an officer makes a traffic stop based on a mistake of law, the stop violates the Fourth Amendment.

■ While the officer need not perfectly understand the law when he stops the vehicle, his observation must give him an objective basis to believe that the vehicle violates the law. We recently upheld the stop of a vehicle when the officer correctly believed the car's window tinting violated the law, although the officer believed all tinting was illegal and the law actually prohibited only darker tinting. *See Wallace,* 213 F.3d at 1220 (the officer's "observations correctly caused him to believe that Wallace's window tinting was illegal; he was just wrong about exactly why"). This case, "in sharp contrast," is one "in which the [driver's] conduct does not in any way, shape or form constitute a crime." *Id.*

■ The government argues that Officer Weeks' belief that two license plates were required was "objectively reasonable" because most states require two license plates, and Officer Weeks did not have experience with Michigan-registered cars. But his belief was wrong, and so cannot serve as a basis for a stop. The government also argues that Officer Weeks in good faith believed Michigan required two plates. But "there is no good-faith exception to the exclusionary rule for police who do not act in accordance with governing law." *Id.* at 1106.[1]

The stop was not supported by reasonable suspicion and therefore violated the Fourth Amendment.

---

1. A factual belief that is mistaken, but held reasonably and in good faith, can provide reasonable suspicion for a traffic stop. *See id.; United States v. Sanders,* 196 F.3d 910, 913 (8th Cir.1999) (stop justified by reasonable suspicion when officer's factual belief regarding date of trailer's manufacture was reasonable, although mistaken). In *United States v. Geelan,* 509 F.2d 737 (1974), the court upheld the constitutionality of a traffic stop when an officer mistakenly believed a car

bearing a single red-and-white plate was from a state that required two plates, and did not realize until after stopping the vehicle that it was from a different state. *Id.* at 743–44. But the officer's mistake in *Geelan* was a mistake of fact-he was wrong about which state the car was from-and occurred in a state with a statute authorizing routine investigations of licenses and motor vehicle registrations. *Id.* at 744. And in *United States v.*

## III. *Fruit of the poisonous tree*

The government argues that even if Twilley has standing to challenge the stop and the stop was made without reasonable suspicion, the evidence should not be suppressed because the connection between the stop and the search was so attenuated that the search (and the evidence discovered, the packages of cocaine) were "sufficiently distinguishable [from the stop] to be purged of the primary taint." *Wong Sun v. United States*, 371 U.S. 471, 488, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963) (quotation omitted). The government has the burden to show that the evidence is not "the fruit of the poisonous tree." *United States v. Johns*, 891 F.2d 243, 245 (9th Cir.1989) (quotations omitted).

The government has not shown that there was a break in the chain of events sufficient to refute the inference that the search and the resulting seizure of the cocaine were products of the stop. *See Brown v. Illinois*, 422 U.S. 590, 597–600, 95 S.Ct. 2254, 45 L.Ed.2d 416 (1975). After Officer Weeks stopped the car, he noticed Twilley lying down in the back seat without a seatbelt. Although he was immediately informed that Michigan issues only one license plate, Officer Weeks continued to question all three occupants of the car until he received conflicting answers. He then called for backup and asked for consent to search. Simmons and Jones both consented to the search. A drug-sniffing dog then alerted to the drugs in the trunk, and the officers began their search there, finding and seizing the cocaine.

The government has not shown that connection between the traffic stop and the search of the car "was sufficiently attenuated to dissipate the taint caused by the illegality." *Johns*, 891 F.2d at 245. In this case, "the interrogation and search were a direct result of the illegal stop." *United States v. Millan*, 36 F.3d 886, 890 (9th Cir.1994) (when illegal traffic stop is directly followed by interrogation, inconsistent answers, and consensual search, evidence suppressed); *see also United States v. Valdez*, 931 F.2d 1448, 1451–52 (11th Cir.1991). "This is a classic case of obtaining evidence through the exploitation of an illegal stop, as is the case when the officer's suspicions are aroused by what he observes following the stop, and on that basis obtains ... consent." *United States v. Arvizu*, 217 F.3d 1224, 1233 (9th Cir. 2000).

## CONCLUSION

Twilley had standing to challenge the stop of the vehicle. Because we conclude that the stop was not supported by reasonable suspicion, and because the subsequent search was a product of the stop, the evidence leading to Twilley's conviction should have been suppressed.[2] We reverse.

---

*Miller*, 146 F.3d 274, 279 (5th Cir.1998), the Fifth Circuit held that the legal justification for a traffic stop "must be objectively grounded," and no objective basis existed when an officer stopped a car for having a turn signal on, which was not a violation of Texas law.

The California court of appeals has rejected the distinction between mistakes of law and mistakes of fact: "The characterization of the problem as a mistake of law or fact begs the question which is the reasonableness of the officer's conduct." *People v. Glick*, 203 Cal. App.3d 796, 250 Cal.Rptr. 315, 318 (1988); *but see Travis v. State*, 331 Ark. 7, 959 S.W.2d 32, 33 (1998) (disagreeing with *Glick*); *State*

*v. McCarthy*, 133 Idaho 119, 982 P.2d 954, 959–60 (1999) (noting state-court conflict whether mistake of law invalidates search and seizure, but declining to resolve issue). In *Lopez–Soto*, however, this court declared the distinction between a mistake of fact and a mistake of law crucial to determining whether reasonable suspicion exists to stop a vehicle.

**2.** Because we hold that the evidence should have been suppressed and reverse Twilley's conviction, we need not reach his appeal of the denial of his motion to appoint an expert to determine whether the traffic stop was based on race.