**UNITED STATES of America,**
**Plaintiff–Appellee,**

v.

**Shantae Monique JONES,**
**Defendant–Appellant.**

No. 02–1048.

United States Court of Appeals,
Sixth Circuit.

Aug. 27, 2003.

James C. Mitchell, Asst. U.S. Attorney, U.S. Attorney's Office, Flint, MI, for Plaintiff–Appellee.

Shantae Monique Jones, pro se, Pekin, IL, for Defendant–Appellant.

BEFORE: KEITH, SUHRHEINRICH, and CLAY, Circuit Judges.

KEITH, Circuit Judge.

A jury convicted Defendant–Appellant Shantae Monique Jones on one count of possession of a firearm with an obliterated serial number, in violation of 18 U.S.C. § 922(k), and one count of possession with intent to distribute crack cocaine, in violation of 21 U.S.C. § 841(a)(1). Defendant now appeals, claiming that the police violated his Fourth Amendment rights when they stopped a vehicle in which he was a passenger, and that evidence obtained as a result of that stop should have been suppressed. For the reasons set forth below, we reject these arguments and AFFIRM Jones's conviction.

## I. BACKGROUND

On February 14, 2001, police in Flint, Michigan sent an informant to a residence at 1502 Illinois Street to make a controlled purchase of illegal narcotics. The informant did not purchase the drugs because the target seller was not at the residence. Another person at the residence advised the informant that the target was at Old Frank's Bar at 2012 Lewis Street, attempting to obtain illegal narcotics to sell. The informant told police that the target was a stocky black man in an old, light green Cadillac.

Police then began a surveillance of Old Frank's Bar and observed the Defendant–Appellant, Shantae Monique Jones, near and inside a silver Cadillac in the parking lot of Old Frank's Bar. Jones fit the physical description provided by the informant.

Police also saw Jones's sister in the Cadillac.[1]

Beginning at around 7:00 p.m. on February 14, 2001, police began following the Cadillac. The vehicle stopped twice at Jones's home, 1826 Walcott, once at the home of Jones's paramour, at the parking lot of a Chi Chi's restaurant, and at a Best Buy store. Police testified at Jones's trial that the Chi Chi's and Best Buy are located in an area known for drug trafficking. At the two residences and at the restaurant, Jones left the car and returned several minutes later. In the restaurant parking lot, Jones entered and exited a white Jeep Cherokee. Officer Marcus Mahan of the Flint Police Department testified that each time Jones returned to the car, "he would reach down between his legs." J.A. at 117. Officer Mahan stated that "there was definitely something on the floorboard that he was dealing with." Id.

Officer Mahan told his supervisor, Sergeant Harold Payer, what he had seen. At Sergeant Payer's command, the car was stopped at 9:40 p.m. Sergeant Payer testified that based on his twelve years' experience as a narcotics investigator, what he and his fellow officers observed that night made him suspicious of drug activity. It was Sergeant Payer's suspicion, together with the informant's information, that led Police to stop the Cadillac.

The officers approached the vehicle and, according to Sergeant Payer, sought permission to search the vehicle. Jones claims that his sister did not consent to the search of the Cadillac, which she was driving at the time it was pulled over. The government contends that Jones's sister consented to a search of the vehicle, and Sergeant Payer testified to that effect.

Police searched the car and found a binocular bag containing the firearm upon which the first count of the indictment was based. Police arrested Jones for carrying a concealed weapon in a motor vehicle, in violation of state law, and took him to an interrogation room at the police station.

At 11:23 p.m. on February 14, 2001, Jones was read his *Miranda* rights. Jones waived those rights and was interviewed by Sergeant Payer. Jones initially gave conflicting accounts of where he lived, so police used a key that they had taken from Jones at the police station to turn the lock at 1826 Walcott and thus verify that it was Jones's residence. The police did not enter the residence at that time. Sergeant Payer testified that he requested, and Jones gave, permission for police to enter his home and seize three firearms.

Sergeant Payer testified that, while looking for the weapons, police found what was later verified to be cocaine residue in plain view. The officers inside Jones's residence informed Sergeant Payer that cocaine was believed to have been found, at which point Sergeant Payer asked, and Jones gave, permission to search the entire house. Police found roughly 220 grams of crack cocaine and $7,000. Police never obtained a warrant to search Jones's house.

During the course of his interview with Sergeant Payer, Jones made inculpatory statements. Jones made additional inculpatory statements in a separate interview conducted by Drug Enforcement Administration Task Force Agent Cedric Kendall between 6:00 and 7:00 p.m. on February 15, 2001. Kendall testified that he does not think he read Jones the *Miranda* warnings before that interview.

Jones was indicted on one count of possession of a firearm with an obliterated

1. We now know that the Cadillac belongs to Jones's sister.

serial number, in violation of 18 U.S.C. § 922(k), and one count of possession with intent to distribute crack cocaine, in violation of 21 U.S.C. § 841(a)(1). An evidentiary hearing was held on April 10, 2001. After that hearing, the defense filed a motion to suppress evidence seized from Jones's person, vehicle, and residence, as well all derivative evidence, resulting from searches conducted on February 14, 2001.

In an opinion and order dated May 18, 2001, the district court granted in part and denied in part the motion to suppress evidence. The district court ordered suppressed certain inculpatory statements made by Jones in an interview that took place on February 15, 2001. The district court held that the statements were obtained in violation of *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), because Jones was not read his *Miranda* warnings prior to the interview on February 15. The district court denied the motion to suppress with respect to all of the other challenged evidence. The case proceeded to trial, and a jury found Jones guilty on both counts of the indictment.

Jones filed a timely notice of appeal. On appeal, Jones argues that the district court erred in refusing to suppress evidence obtained after police stopped a car in which he was riding. Jones contends that the stop was illegal because the officers did not have a reasonable suspicion, supported by articulable facts, that criminal activity was afoot. Jones further contends that the subsequent search of the automobile, the seizure of a binocular bag containing a firearm, his arrest, his statement to police, and the search of his residence all resulted from the initial, illegal stop, and that any evidence obtained after and because of the illegal stop must be excluded under the "fruit of the poisonous tree" doctrine.

## II. DISCUSSION

### A. Standard of Review

In reviewing the denial of a motion to suppress evidence, we accept the district court's factual findings unless they are clearly erroneous. *United States v. Martin,* 289 F.3d 392, 396 (6th Cir.2002). Conclusions of law, including determinations of reasonable suspicion and probable cause, are reviewed *de novo. Id.* (citing *Ornelas v. United States,* 517 U.S. 690, 699, 116 S.Ct. 1657, 134 L.Ed.2d 911 (1996)).

### B. Analysis

The Fourth Amendment prohibits "unreasonable searches and seizures" by the Government. U.S. CONST. AMEND. IV. Its protections extend to brief investigatory stops of persons or vehicles that fall short of traditional arrest. *Terry v. Ohio,* 392 U.S. 1, 9, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). The Supreme Court has held that in such cases, the Fourth Amendment is satisfied if the police officer's action is supported by reasonable suspicion that criminal activity may be afoot. *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 104 L.Ed.2d 1 (1989). In evaluating whether an officer had reasonable suspicion of criminal activity, reviewing courts must look at the "totality of the circumstances" to see whether the detaining officer has a "particularized and objective basis" for suspecting legal wrongdoing. *United States v. Arvizu,* 534 U.S. 266, 273, 122 S.Ct. 744, 151 L.Ed.2d 740 (2002) (citing *United States v. Cortez,* 449 U.S. 411, 417–18, 101 S.Ct. 690, 66 L.Ed.2d 621 (1981)). "This process allows officers to draw on their own experience and specialized training to make inferences from and deductions about the cumulative information available to them that might well elude an untrained person." *Id.* (internal quotation marks and citations omitted).

The likelihood of criminal activity "need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *Id.* (citations omitted).

■ In this case, the district court concluded that the officers' stop of Jones's Cadillac was supported by reasonable suspicion that criminal activity was afoot. The district court noted that police followed Jones and his sister around Flint for nearly three hours before pulling them over. During that time, the police were able to corroborate all but one of the verifiable details of the informant's tip.[2] Furthermore, police observed what the district court characterized as "conduct ... consistent with the behavior of a drug dealer seeking to resupply his inventory." J.A. at 67. The district court also credited Sergeant Payer's testimony that the Chi Chi's parking lot where Jones stopped was a known haven for drug activity. The district court concluded that the corroboration of the informant's tip and the behavior observed by the police during their surveillance of Jones were sufficient to create reasonable suspicion that criminal activity was afoot.

We agree that the officers' actions in this case were supported by reasonable suspicion that criminal activity was afoot. The officers' reasonable suspicion was based on several factors. First, when their informant went to Jones's residence, he was advised that Jones, a black male with a stocky build, had gone to Old Frank's Bar in an old Cadillac to acquire additional cocaine to sell. Second, police saw a man matching the informant's description in an old Cadillac outside of Old Frank's Bar. Third, police followed Jones and his sister around Flint as they made a

series of brief stops, including one at a restaurant parking lot notorious for drug activity. Fourth, each time Jones returned to the vehicle, he reached down between his legs, "dealing with ... something on the floorboard," according to the officer who observed this behavior.

It is true that some of the actions just described, if viewed in isolation, may not give rise to reasonable suspicion. As the district court noted, "there is nothing criminal or suspect about being a stocky black man in an old Cadillac at Old Frank's Bar at a specific time." J.A. at 66. Furthermore, reaching down between one's legs after getting into a car is not necessarily suspicious behavior: a person driving around town distributing fliers might do that.

However, the Supreme Court has stated that a series of actions may give rise to reasonable suspicion even though each action was "perhaps innocent in itself." *Terry*, 392 U.S. at 22, 88 S.Ct. 1868. We believe that based on the totality of the circumstances of this case, the officers had a "particularized and objective basis" for suspecting legal wrongdoing. Based on information provided by an informant, police were looking for a stocky, black male who, they were told, had gone to Old Frank's Bar in a Cadillac to purchase drugs. The officers went to Old Frank's Bar and found a stocky, black male in a Cadillac. They followed him as he made a series of brief stops, after each of which he would manipulate objects on the floor of the car. The officers, drawing "on their own experience and specialized training," including their knowledge that one of Jones's stops was at a place known for

---

**2.** The informant had said Jones would be in a light green Cadillac; the Cadillac was actual-    ly silver.

drug activity, reasonably suspected that Jones was involved in drug trafficking.

Moreover, several of Jones's actions are difficult to characterize as innocent. For example, the brief of the appellant states that "[t]here is certainly nothing unusual about an individual talking to another individual in the parking lot of a restaurant, even one in an area where know narcotics trafficking has occurred." Appellant's Br. at 20–21. However, in this case, what was observed at the Chi Chi's was not merely "an individual talking to another individual." Police saw Jones enter and exit a white Jeep Cherokee, and when Jones returned to the Cadillac, he was seen manipulating something between his legs on the floor of the car.

Jones argues that much of the evidence against him should have been suppressed because it flowed from the allegedly unconstitutional stop of the Cadillac. Jones accurately recites both the Exclusionary Rule and the "fruit of the poisonous tree" doctrine. However, neither principle applies in this case to render the evidence inadmissible.

The Fourth Amendment prohibits illegally seized evidence from being used against an accused. *Mapp v. Ohio*, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961). Unless a defendant has standing to challenge a search and seizure, the evidence obtained will not be suppressed. *See United States v. Salvucci*, 448 U.S. 83, 100 S.Ct. 2547, 65 L.Ed.2d 619 (1980). Specifically, a defendant must show that (1) he manifested a subjective expectation of privacy in the object of the challenged search, and (2) society is prepared to recognize that expectation as legitimate. *California v. Ciraolo*, 476 U.S. 207, 211, 106 S.Ct. 1809, 90 L.Ed.2d 210 (1986).

In this case, Jones has not shown that he had a subjective expectation of privacy in either his sister's car or the binocular bag in which the firearm was found. A passenger in a car has no reasonable expectation of privacy that would permit him to challenge a search of the car on Fourth Amendment grounds, *United States v. Twilley*, 222 F.3d 1092, 1095 (9th Cir.2000); *United States v. Eylicio–Montoya*, 70 F.3d 1158, 1162 (10th Cir.1995), and Jones has introduced no evidence that he had a subjective expectation of privacy in the binocular bag.

The other evidence used to convict Jones was obtained when police searched his home. The Government claims that Jones consented to a search of his home. Jones apparently does not deny that he gave police permission to enter his home. Instead, Jones argued in the district court that any consent given was involuntary. As the district court explained, Jones failed to show that his consent was involuntary. On appeal, Jones has again failed to produce any evidence that his consent was involuntarily given. Rather, he merely resurrects arguments that the district court properly rejected. *See, e.g.,* Pro Se Appellant's Br. at 4 ("No consent to search form was used . . . ."). For these reasons, the searches of the Cadillac, the binocular bag, and Jones's residence were all legal, and evidence obtained during these searches was properly allowed.

Jones also argues that the evidence obtained in the various searches must be excluded under the "fruit of the poisonous tree" doctrine. Evidence obtained through the exploitation of police illegality is inadmissible. *Wong Sun v. United States*, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Jones argues that all of the evidence used against him flowed directly from the allegedly illegal stop of the Cadillac on February 14, 2001. We agree, and the Government does not dispute, that the evidence obtained during the

searches of the Cadillac and Jones's residence is traceable to the initial stop. However, the initial stop of the Cadillac on February 14, 2001 was not illegal. Therefore, we must reject Jones's "fruit of the poisonous tree" argument.

## III.  CONCLUSION

For these reasons, the defendant's conviction is **AFFIRMED**.