Filed 4/16/13  P. v. Aguirre CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>AURELIO CONSTANTINO AGUIRRE,<br><br>    Defendant and Appellant. | B221110<br><br>(Los Angeles County<br>Super. Ct. No. PA064250) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Kathryne A. Stoltz, Judge.  Affirmed.

Kevin S. Lacey, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Lawrence M. Daniels and Eric E. Reynolds, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Aurelio Constantino Aguirre (Aguirre) appeals from the judgment convicting him of possession of a firearm by a felon in violation of Penal Code section 12021, subdivision (a)(1)[1] (count 1) and possession of ammunition in violation of section 12316, subdivision (b)(1) (count 2). He contends that the handgun and ammunition he was charged with possessing should have been suppressed because they were discovered during an illegal traffic stop.

We find no error and affirm.

**FACTS**

In the late afternoon of March 1, 2009, Officer Timo Peltonen and Officer Cesar Flores of the Los Angeles Police Department were in a marked black and white patrol vehicle facing westbound on Fillmore Street. Officer Peltonen was at the wheel. From a couple hundred feet away, he noticed a black Dodge Charger (the Charger) heading northbound on Glenoaks Boulevard. The Charger did not have a front license plate. It was occupied by male Hispanics. Officer Peltonen followed the Charger but did not engage the patrol vehicle's lights. He observed that the Charger's left front and left rear tire went over the double yellow lines and into the opposing lanes of traffic on two occasions within a couple of blocks. Each time, it took a second or two for the Charger to cross back over the lines. He initiated a traffic stop.

The Charger pulled over to the right-hand curb. Officer Peltonen approached the driver, Mr. Luna, and Officer Flores approached Aguirre, who was sitting in the front passenger seat. Mr. Luna said that he had owned the Charger for a year and simply did not have the "plates."

Officer Flores observed the butt of a revolver sticking out of the right pocket of Aguirre's shorts and retrieved the weapon. Subsequently, Officer Peltonen observed a second firearm in the passenger door's storage compartment and recovered it. Both weapons were loaded.

---

[1]     All further statutory references are to the Penal Code unless otherwise indicated.

2

After the People filed an information against Aguirre with prior prison term allegations (§ 667.5) and a gang allegation (§ 186.22, subd. (b)(1)(A)), Aguirre filed a motion to suppress on the theory that Officer Peltonen and Officer Flores lacked probable cause for a traffic stop. The motion was denied. The trial court stated: "I feel that there are two grounds to legitimately stop the car; . . . no front plate, at least one plate, and the erratic driving. And when officer Flores went to the passenger side, we know that's common so that the car is secure. He saw what he said he saw. I find no reason to disbelieve [the officers]. . . . [¶] There was sufficient probable cause to stop the car."

The case proceeded to trial. A jury convicted Aguirre on count 1 and count 2 but found the gang allegation to be not true. He admitted one prior prison term allegation and was sentenced to four years in state prison on count 1. On count 2, he was sentenced to three years in prison. The trial court stayed the sentence on count 2 pursuant to section 654. Aguirre received a total of 426 days of presentence custody credit.

This timely appeal followed.

## DISCUSSION

### I. Standard of Review.

When reviewing the denial of a motion to suppress, we "defer to the trial court's factual findings where supported by substantial evidence, but we must exercise our independent judgment to determine whether, on the facts found, the search and seizure was reasonable under the Fourth Amendment standards of reasonableness. [Citation.]" (*People v. Avila* (1997) 58 Cal.App.4th 1069, 1073–1074, citing *People v. Leyba* (1981) 29 Cal.3d 591, 596–597.)

### II. Traffic Stop Law.

Under the Fourth Amendment, a police officer may conduct an investigatory stop of a vehicle only if he possesses a reasonable suspicion based on specific, articulable facts and reasonable inferences that "'the particular person detained is engaged in criminal activity.' [Citation.]" (*U.S. v. Lopez-Soto* (9th Cir. 2000) 205 F.3d 1101, 1105; *U.S. v. Twilley* (9th Cir. 2000) 222 F.3d 1092, 1095 (*Twilley*).) A passenger may

challenge a traffic stop on Fourth Amendment grounds even if he has no possessory or ownership interest in the vehicle.  (*Ibid*.)

**III.  Reasonable Suspicion to Stop the Charger.**

Aguirre argues that the police officers did not have a reasonable suspicion of criminal activity because the Charger was not required to have a front license plate and Mr. Luna's driving was not erratic.

We disagree.

A.  <u>The absence of a front license plate</u>.

Section 5200 of the Vehicle Code provides:  "(a) When two license plates are issued by the department for use upon a vehicle, they shall be attached to the vehicle for which they were issued, one in the front and the other in the rear.  [¶]  (b) When only one license plate is issued for use upon a vehicle, it shall be attached to the rear thereof, . . . "  The absence of a front license plate "has long been recognized as a legitimate basis for a traffic stop.  [Citations.]"  (*People v. Saunders* (2006) 38 Cal.4th 1129, 1136 (*Saunders*).)  "The question . . . is not whether . . . [a] vehicle was in full compliance with the law at the time of the stop, but whether [the officer] had '"articulable suspicion"' that it was not.  [Citations.]"  (*Ibid*.)  Based on *Saunders*, Officer Peltonen was justified in suspecting that the absence of a front license plate on the Charger was a violation of the Vehicle Code and grounds for a traffic stop.  Even if the Charger was actually in compliance with the law, the stop was still lawful.

Aguirre argues that the evidence at the suppression hearing established that the Charger was manufactured to display a single plate in the rear of the vehicle.  By implication, he suggests that the Department of Motor Vehicles (DMV) issued only one license plate to Mr. Luna.  In support, Aguirre points to the following testimony of Officer Peltonen at the suppression hearing.  Officer Peltonen understood that if the DMV issued only one license plate, a car was not required to have a license plate in the front.  He was aware of only one such type of car, a Mitsubishi Lancer.  As to the Charger Mr. Luna was driving, Officer Peltonen had no knowledge as to whether it was made to have one license plate or two.

4

The evidence cited is insufficient to establish that the Charger needed only one license plate. Officer Peltonen did not know how many license plates were issued for the Charger. Nor did he know how many license plates the Charger could display based on the way it was manufactured. Moreover, Officer Peltonen testified: "Mr. Luna told me that he had owned the vehicle for approximately one year. And he just simply didn't have the plates for the vehicle." Mr. Luna's reference to "plates" was to more than one license plate. The reasonably deducible inference was that the Charger was supposed to have two license plates.

The argument offered by Aguirre is akin to the argument that was offered by the appellant in *Saunders* and rejected. The appellant pointed out "that a front license plate is required only '[w]hen two license plates are issued by the [DMV]' [citation], implying that only one plate had been issued [for the] vehicle." (*Saunders*, *supra*, 38 Cal.4th at p. 1136.) The implication carried no weight because the appellant "offer[ed] no reason why that vehicle, a seemingly ordinary pickup truck, would have been issued only one license plate." (*Ibid*.) In addition, the court noted that the driver's testimony "indicated that he was going to receive his 'plates' when he had finished the registration process," which suggested "that the vehicle must have been issued two plates." (*Ibid*.) Finally, the appellant failed "to explain why an officer observing the pickup truck with a missing front license plate would have had no basis for believing two plates had been issued." (*Ibid*.) *Saunders* supports affirming.

In his reply brief, Aguirre adverts to Officer Peltonen's testimony at trial. At one point, Officer Peltonen testified that he took a photograph of the Charger's front end. When shown the photograph and asked if he saw a place for a license plate, he said, "No." According to Aguirre, this evidence establishes that only one plate could be mounted on the Charger and therefore there was no violation of Vehicle Code section 5200. This argument is unsound. First, the evidence was not presented at the suppression hearing and is therefore irrelevant to our determination of whether the trial court's denial of the motion to suppress was error. Second, there is no evidence on the pivotal issue of whether the DMV issued one or two license plates and therefore whether

there was a violation of the Vehicle Code. Three, Officer Peltonen's trial testimony does not establish why he saw no place to mount a license plate on the front. Perhaps the Charger was manufactured that way. Or perhaps the Charger's front end had been modified after purchase. The record is silent. Four, compliance with the law is not the question, as already indicated. The question is whether the stop was based on articulable suspicion of criminal activity. It was.

In the Ninth Circuit, "a belief based on a mistaken understanding of the law cannot constitute the reasonable suspicion required for a constitutional traffic stop." (*Twilley*, *supra,* 222 F.3d at p. 1096.) Citing *Twilley*, Aguirre contends that the traffic stop was unlawful because it was based on Officer Peltonen's mistaken understanding of the law. The problem for Aguirre is that there is no evidence that Officer Peltonen's grasp of the law was faulty. His testimony at the suppression hearing confirmed that he was well aware that a vehicle did not have to display a license plate on the front if the DMV issued only one license plate. More importantly, he properly understood that Vehicle Code section 5200, subdivision (a) required a vehicle to display a license plate on the front and back if two license plates had been issued. Thus, his understanding of the law easily passes scrutiny. And, as explained in *Saunders*, the absence of a front license plate is grounds for a traffic stop.

Our analysis could end here.

B. <u>Mr. Luna's driving</u>.

Aguirre argues that Officer Peltonen did not have a reasonable suspicion that Mr. Luna violated the Vehicle Code by crossing the double yellow lines.

This argument lacks merit.

Vehicle Code section 21460 provides: "(a) If double parallel solid yellow lines are in place, a person driving a vehicle shall not drive to the left of the lines, except as permitted in this section. [¶] . . . [¶] (d) The markings as specified in subdivision (a) . . . do not prohibit a driver from crossing the marking if (1) turning to the left at an intersection or into or out of a driveway or private road, or (2) making a U-turn under the rules governing that turn, and the markings shall be disregarded when authorized signs

6

have been erected designating offcenter traffic lanes as permitted pursuant to Section 21657."

Based on Officer Peltonen's testimony at the suppression hearing, the trial court permissibly found that he had an articulable suspicion that Mr. Luna violated the Vehicle Code when his left front and rear tires crossed over the double yellow lines and into the opposing lane on two occasions.

Aguirre contends that Vehicle Code section 21460 cannot be used to justify the stop because Officer Peltonen did not cite it in his testimony as the basis for the traffic stop. We cannot concur.

Initially, Officer Peltonen stated that when Mr. Luna crossed the double yellow lines, he violated Vehicle Code section 21658, subdivision (a). The prosecutor then said: "And actually I'm going to ask you. In your police report you have a Vehicle Code section 21657[,] subdivision [(a)] of the Vehicle Code. Is that the violation that you were referring to[,] or is it [section] 21658[, subdivision (a)]?" Officer Peltonen replied: "I believe it's [section] 21657[, subdivision (a)]." It is apparent that Officer Peltonen failed to identify the applicable statute in both his police report and his suppression hearing testimony.

Vehicle Code section 21657 provides: "The authorities in charge of any highway may designate any highway, roadway, part of a roadway, or specific lanes upon which vehicular traffic shall proceed in one direction at all or such times as shall be indicated by official traffic control devices. When a roadway has been so designated, a vehicle shall be driven only in the direction designated at all or such times as shall be indicated by traffic control devices." This statute does not set forth the law governing when a vehicle can cross a double yellow line. Neither does the next statute, Vehicle Code section 21658, subdivision (a). It provides: "Whenever any roadway has been divided into two or more clearly marked lanes for traffic in one direction, the following rules apply: [¶] (a) A vehicle shall be driven as nearly as practical entirely within a single lane and shall not be moved from the lane until such movement can be made with reasonable safety. [¶] (b) Official signs may be erected directing slow-moving traffic to use a designated lane

7

or allocating specified lanes to traffic moving in the same direction, and drivers of vehicles shall obey the directions of the traffic device." (Veh. Code, § 21658.)

Even though Officer Peltonen cited the wrong statutes at the suppression hearing, a reading of the transcript reveals that the trial court, Officer Peltonen and the lawyers all understood that the question presented was whether Mr. Luna had violated the Vehicle Code when he crossed the double yellow lines. Officer Peltonen testified that Mr. Luna did so. In addition, the lawyers argued the issue. In substance if not name, the trial court determined that there was a reasonable suspicion that Mr. Luna violated Vehicle Code section 21460. We perceive no prejudice to Aguirre, nor any reason to second guess the trial court's ruling.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


_____, J.
　　　　　ASHMANN-GERST


We concur:


_____, P. J.
　　　BOREN


_____, J.
　　　CHAVEZ


8