Filed 1/21/14  P. v. Williams CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

|  |  |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>SHAWN WILLIAMS,<br><br>    Defendant and Appellant. | B246512<br><br>(Los Angeles County<br>Super. Ct. No. SA079149) |

APPEAL from a judgment of the Superior Court of Los Angeles County. Cynthia Rayvis, Judge.  Affirmed.

Jerome J. Haig, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Steven D. Matthews, Timothy M. Weiner and Jessica Owens, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Shawn Williams (Williams) appeals from the judgment entered on his plea of no contest to sale or transportation of marijuana (Health & Saf. Code, § 11360, subd. (a)) and possession of marijuana for sale (Health & Saf. Code, § 11359). According to Williams, the trial court erred when it failed to grant his motion to suppress evidence on the grounds that the prosecution's evidence was obtained during an illegal traffic stop for tinted windows. We find no error and affirm.

## FACTS

**The Traffic Stop and Arrest**

On November 2, 2011, at about 10:40 a.m., Detective Jose Saldana of the Hawthorne Police Department was watching a residence in Gardena as part of a narcotics investigation.

Detective Saldana observed Williams drive up in a Buick, pull into the driveway and get out of his vehicle. A passenger emerged from the Buick carrying a blue plastic bin and a cardboard box. Together, they went inside the residence. A short time later, Williams exited the residence while carrying what appeared to be a plastic trash bag. He placed the bag into some garbage cans, and then went back inside. The passenger exited the residence with a taped up cardboard box, placed it in the rear passenger area of the Buick, then drove away in another vehicle. Soon after, Williams left the residence, got into the Buick and drove off.

As Williams was driving away, Detective Saldana radioed to Detective Tim Johnson and his partner to "get their own probable cause for [a traffic] stop and initiate a narcotic[s] investigation." Detective Johnson was informed that Williams's vehicle had tinted windows. When Williams drove past the nearby location where Detective Johnson was parked facing Crenshaw Boulevard, he saw that the Buick had a dark tint on the front driver's and passenger's windows. The tinting came from a film that had been applied to the windows, which made them darker than factory glass. Detective Johnson's vehicle was equipped with a system that captured video of the Buick.

Because of the tinted windows, Detective Johnson initiated a traffic stop. Hawthorne police obtained a search warrant and seized the cardboard box. It contained a

2

blue plastic bin that held approximately nine bindles of marijuana, each of which was a foot long and six inches thick. Police recovered approximately $4,000 in cash from Williams's pocket. He was arrested. More marijuana was discovered in the Gardena residence.

**The Motion to Suppress**

Williams moved to suppress the evidence obtained as a result of the traffic stop. He argued that the search of the Buick and seizure of evidence violated the Fourth and Fourteenth Amendments of the United States Constitution because Detective Johnson did not possess specific, articulable facts causing him to suspect that Williams was violating the law. According to Williams, the tinting on the Buick did not violate Vehicle Code section 26708, subdivision (a)(1).[1]

At the hearing, Detective Johnson testified that pursuant to his training, a good traffic stop for a tinted windows violation occurs when the windows are so dark that an officer cannot see the occupants inside. In his 23 years of experience, Detective Johnson had seen tinted windows in excess of 1,000 times. Vehicles with tinting similar to the Buick make the interior completely dark at night so that the occupants cannot be seen. As a result, an approaching officer cannot see whether an occupant has a weapon.

Photos of the Buick were admitted into evidence by both sides. The defense introduced video of the Buick.

Offering its initial thoughts, the trial court stated: "Unlike [*People v. Butler* (1988) 202 Cal.App.3d 602 (*Butler*) and *People v. Niebauer* (1989) 214 Cal.App.3d 1278, 1292 (*Niebauer*)], we do not have a bare opinion of the officer as to the level of tinting and illegal level of tint in here. [¶] We actually have a video, as well as some photographs, one photograph and some stills from the video, for the finder of fact to view to see if this is an objectively reasonable stop and if the level of tint was indeed an illegal tint. [¶] In addition to that, we do have the officer's opinion . . . he thought it was dark and to an illegal extent. He used some of the words articulated in *Niebauer* for why this

---

[1]     All further statutory references are to the Vehicle Code unless otherwise indicated.

was an illegal level of tint.  [¶]  So I think under that standard it was reasonable—at least a reasonable suspicion, if not probable cause[—]to believe a violation of the Vehicle Code had occurred and to stop the [Buick] and contact [Williams].  . . . [The motion] was confined only to the stop based on the tinted windows.  [¶]  . . .  [¶]  . . . I think from all of the evidence presented—from the stills, video from the defense, as well as the photograph introduced by the defense—there was a substance affixed to the window that was obstructing the view that reduces the light transmission to a little degree, and I think the court should deny the motion based on that."

The parties engaged in a lengthy colloquy with the trial court.  Afterwards, the motion to suppress was denied.

**The Plea; Sentencing**

Williams pleaded no contest and was sentenced to 365 days in county jail.  He was given four days of actual custody credit and four days of good time/work time credit for a total of eight days of credit.

This timely appeal followed.  The appeal is permitted by Penal Code section 1538.5, subdivision (m).[2]

**DISCUSSION**

**I.  Standard of Review.**

When reviewing the denial of a motion to suppress evidence, "[w]e defer to the trial court's factual findings, express or implied, where supported by substantial evidence.  In determining whether, on the facts so found, the search or seizure was reasonable under the Fourth Amendment, we exercise our independent judgment. [Citations.]"  (*People v. Glaser* (1995) 11 Cal.4th 354, 362.)

---

[2]      Penal Code section 1538.5, subdivision (m) provides in part:  "A defendant may seek further review of the validity of a search or seizure on appeal from a conviction in a criminal case notwithstanding the fact that the judgment of conviction is predicated upon a plea of guilty.  Review on appeal may be obtained by the defendant provided that at some stage of the proceedings prior to conviction he or she has moved for the return of property or the suppression of the evidence."

4

## II.  Traffic Stop Law.

A police officer may conduct a traffic stop if he or she has a reasonable suspicion that the detainee is engaged in criminal activity.  The suspicion must be based on specific, articulable facts that give rise to inferences that are objectively and reasonably drawn.  An officer can "rely on his training and experience in drawing inferences from the facts he observes, but those inferences must . . . 'be grounded in objective facts and be capable of rational explanation.'  [Citations.]"  (*U.S. v. Lopez-Soto* (9th Cir. 2000) 205 F.3d 1101, 1105; *People v. Souza* (1994) 9 Cal.4th 224, 231 [a police officer must "point to specific articulable facts that, considered in light of the totality of the circumstances, provide some objective manifestation that the person detained may be involved in criminal activity"].)

If a vehicle is stopped based on window tinting, a police officer must have reasonable suspicion that the windows were illegally tinted.  (*Butler*, *supra*, 202 Cal.App.3d at p. 606.)  A vehicle stop is not justified simply because a vehicle has tinted windows.  (*Id*. at p. 607 ["Without additional articulable facts suggesting that the tinted glass is illegal, the detention rests upon the type of speculation which may not properly support an investigative stop"].)

## III.  Section 26708.

Pursuant to section 26708, subdivision (a)(1), a person shall not drive a vehicle with any material affixed or applied upon the windshield or side or rear windows.  "Notwithstanding subdivision (a), clear, colorless, and transparent material may be installed, affixed, or applied to the front side windows, located to the immediate left and right of the front seat if the following conditions are met:  [¶]  (1) The material has a minimum visible light transmittance of 88 percent.  [¶]  (2) The window glazing with the material applied meets all requirements of Federal Motor Vehicle Safety Standard No. 205 [citation], including the specified minimum light transmittance of 70 percent and the abrasion resistance of AS-14 glazing, as specified in that federal standard.  [¶] (3) The material is designed and manufactured to enhance the ability of the existing window glass to block the sun's harmful ultraviolet A rays.  [¶]  (4) The driver has in his

5

or her possession, or within the vehicle, a certificate signed by the installing company certifying that the windows with the material installed meet the requirements of this subdivision and identifies the installing company and the material's manufacturer by full name and street address, or, if the material was installed by the vehicle owner, a certificate signed by the material's manufacturer certifying that the windows with the material installed according to manufacturer's instructions meet the requirements of this subdivision and identifies the material's manufacturer by full name and street address." (§ 26708, subd. (d).)

**IV.  The Motion to Suppress was Properly Denied.**

Williams contends that the traffic stop was unlawful because the window tinting on the Buick was legal, and because Detective Johnson could not point to any specific, articulable facts suggesting criminal activity.

We disagree.

The logical point of analytical departure is the tinting. Was it legal or illegal? Though Williams suggests it was legal, there was no evidence to that effect. Thus, we cannot determine whether the tinting on the Buick falls within the exception in section 26708, subdivision (d). For example, there is no evidence that the material had a minimum visible light transmittance of 88 percent.

Turning to whether Detective Johnson had a reasonable suspicion that the tinting was illegal, we are mindful of the teaching in *Butler* that window tinting, without more, does not justify a traffic stop. Here, there was more. Fairly understood, Detective Johnson testified that he was trained that tinting is illegal if it prevents an officer from seeing the vehicle's occupants. After 23 years on the job, he had seen over 1,000 tinted windows and knew that tinting similar to the dark tinting on the Buick prevents an officer from seeing inside at night. Case law permits an officer to rely on training and experience when drawing inferences if, as in this case, they are grounded in objective facts and can be explained. Detective Johnson's testimony, along with evidence establishing that the tinted windows were darker than factory glass, permitted the trial court to find the traffic stop lawful.

Aside from the above, the trial court relied on photographs and video of the Buick, none of which are part of the record on appeal. Suffice it to say, we presume that the photographs and video provided independent support for the trial court's factual findings. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 "[All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown"].)

In reaching our conclusion, we take heed of *Niebauer*. At issue there was the sufficiency of the evidence to support a conviction for a violation section 26708, subdivision (a). The court observed that the violation was an infraction, and "that such infractions literally number in the millions and are handled with the most limited amount of public resources, often without a prosecutor present at or during the proceedings[.]" (*Niebauer*, *supra*, 214 Cal.App.3d at p. 1291.) As a result, the court concluded that it was "unreasonable for a court to expect the People to produce the kind of scientific evidence and resources that would ordinarily be appropriate for other forms of litigation. Therefore, some sense of practicality is required in approaching the measure and type of proof for conviction in cases such as this." (*Id*. at pp. 1291–1292.) Continuing on, the court stated: "We expect that law enforcement officers enforcing this statute, based upon their training and experience with vehicles in general, will be able to examine a suspect vehicle, look through the windows if possible, and form an opinion as to whether or not the tinting on the windows obscures the light below the 70 percent margin. We don't call upon the officers to be scientists or carry around and use burdensome equipment to measure light transmittance, nor do we expect them to discuss the sufficiency or insufficiency of the light transmittance as if they were an expert witness on the subject. [¶] Rather, a commonsense approach to the enforcement of this statute was envisioned by the Legislature. If an officer forms an opinion in a commonsense examination of a vehicle that there is a film placed upon the vehicle's windows in an unauthorized place or that light is obstructed in the fashion contemplated by the statute, such evidence will be sufficient to support conviction[.]" (*Id*. at p. 1292.) Similar practicality is called for in connection with traffic stops.

7

Williams complains that at the hearing below, Detective Johnson demonstrated ignorance of the technical requirements of section 26708. But a police officer observing a vehicle with tinted windows cannot possibly determine whether they have, inter alia, a minimum visible light transmittance of 88 percent. The only way for a police officer to enforce the statute is through training that provides him or her with a rule that can be realistically applied. Per Detective Johnson, he received just such training. Consequently, he had practical knowledge of the requirements of section 26708 for purposes of enforcing it. We conclude that as long as that training was reasonable, then a traffic stop based on that training is reasonable for Fourth Amendment purposes. Williams has not demonstrated, nor do we have cause to conclude, that the training Detective Johnson received was unreasonable.

In the Ninth Circuit, "a belief based on a mistaken understanding of the law cannot constitute the reasonable suspicion required for a constitutional traffic stop." (*U.S. v. Twilley* (9th Cir. 2000) 222 F.3d 1092, 1096 (*Twilley*).) "If an officer simply does not know the law, and makes a stop based upon objective facts that cannot constitute a violation, his suspicions cannot be reasonable. The chimera created by his imaginings cannot be used against the driver." (*U.S. v. Mariscal* (9th Cir. 2002) 285 F.3d 1127, 1130.) California law is in accord, as stated in *People v. White* (2003) 107 Cal.App.4th 636, 644 (*White*). (But see *People v. Glick* (1988) 203 Cal.App.3d 796 [there is no distinction between a mistake of law and a mistake of fact; the pertinent issue is the reasonableness of the officers conduct under the circumstances].)[3] Williams seizes upon this rule and claims that the traffic stop was unlawful because it was based on a mistake of law. The premise does not hold. Whether or not Detective Johnson knew the technical requirements of section 26708, there is no showing that the statute and his training were inconsistent. In other words, Williams has not established that Detective Johnson's training was out of sync with section 26708 such that it comprised a mistake of

---

[3] *Twilley* explains that "[a] factual belief that is mistaken, but held reasonably and in good faith, can provide reasonable suspicion for a traffic stop." (*Twilley*, *supra*, 222 F.3d at p. 1096, fn. 1.)

law.  And Williams forgets a salient point.  In *Twilley*, there was no legal justification for the traffic stop.  The officer wrongly believed that a vehicle from Michigan, which only requires one license plate, violated California law by not having two license plates.  (*Twilley*, *supra*, 222 F.3d at p. 1096 ["This case . . . is one 'in which the [driver's] conduct does not in any way, shape or form constitute a crime'"].)  *White* is analogous.  In the case at bar, unlike in *Twilley* and *White*, there is no showing that the detainee was lawfully driving.  Further, regarding an officer's understanding of the law, *Twilley* explains that "[w]hile the officer need not perfectly understand the law when he stops the vehicle, his observations must give him an objective basis to believe that the vehicle violates the law."  (*Ibid*.)  This comment supports our view that a practical understanding of the law is sufficient.

## DISPOSITION

The judgment is affirmed.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, J.
                 ASHMANN-GERST


We concur:


_____, P. J.
       BOREN


_____, J.
       CHAVEZ